GEORGE BLAKE *vs.* EMELINE BLAKE.

*Divorce. Husband and wife. R. S., c.* 61.

A man who has made valuable improvements upon the real estate of his wife, paid taxes assessed thereon, and removed incumbrances, &c., at her request and upon her promise to pay for the same, was held entitled under R. S., c. 61, after the dissolution of the marriage by divorce, to recover for such improvements and moneys paid, &c., &c.

ON REPORT.

ASSUMPSIT upon an account annexed and the money counts, based upon the following facts, as stated to the court for the sole purpose of determining whether or not the action could be maintained upon proof of them.

"The plaintiff and defendant intermarried July 20, 1869, and lived together as man and wife up to October 30, 1871, and then parted.

The defendant made application for divorce, by libel dated November 9, 1871, entered at the February term, 1872, of this court. A divorce from the bonds of matrimony was decreed at the September term, 1872.

Previous to the marriage the defendant owed a note to Gilman

Lyford secured by mortgage on her real estate in Atkinson. Subsequently, but previous to the marriage, she with her son Lewis Cook, gave a joint note of herself and Lewis to Mr. Lyford in payment of the first mentioned note. Previous to the marriage, the plaintiff at the defendant's request, promised the defendant that he would pay the note signed by her and Cook. A few weeks subsequently to their marriage he did pay the full amount of the note to Lyford ; took up the note and put it into a small unlocked trunk which was in a closet, of which his wife held the key, and she then destroyed the note without his consent.

Before the marriage the defendant promised that if the plaintiff would pay this note, she would secure him upon her real estate in Atkinson and pay the same ; but she never secured nor paid the note.

When they parted October 30, 1871, the plaintiff looked for the note in the trunk but did not find it. The amount paid to Lyford was one hundred and twenty-eight dollars.

During the time of the marriage the plaintiff and defendant resided and kept house in her house in Atkinson and he made certain improvements on the premises, by making an addition to the stable on the same, and repairing the house to the extent of $200 ; put in a fire-frame costing $11 ; set out fruit trees on her land costing $8 ; labored on her land two hundred days, worth $200; boarded her daughter by her former husband, Cook, seventy-five weeks, worth $2 per week ; paid taxes on the property assesssed previous to the marriage, $10.

No promise of any kind has been made by the defendant to the plaintiff since the date of the libel of divorce. Repairs, taxes, improvements on her property, and board of her daughter were done with the defendant's consent, and with her promise to repay the same to the plaintiff.

The defendant, for the purpose of trying the question whether the action is maintainable upon the foregoing statement, admits the facts to be as stated, not however to be in any way prejudiced thereby in any subsequent trial. If the action is maintainable on

Blake *v.* Blake.

this statement, it is to stand for trial; otherwise the plaintiff is to be nonsuited."

*Henry Hudson* for the plaintiff.

The promise to repay the note was before they were married. Marriage is a good consideration for a promise. *Vance* v. *Vance*, 21 Maine, 364, and cases there cited.

Nor did the marriage relation prevent their making valid contracts with each other. *Motley* v. *Sawyer*, 34 Maine, 540, and 38 Maine, 68.

They can hold by conveyance from each other. *Davis* v. *Herrick*, 37 Maine, 397; *Randall* v. *Lunt*, 51 Maine, 246; *Mayo* v. *Hutchinson*, 57 Maine, 546; *Tunks* v. *Grover*, Id., 586; R. S., c. 61, § 4.

*Josiah Crosby* for the defendant.

As the divorce was on her libel, for his fault, he can not now recover unless he could have done so during coverture; because, if they could not then contract, no contract has since been made. But suit by one against the other could not have been maintained; nor could they contract with each other. *Smith* v. *Gorman*, 41 Maine, 405; *Crowther* v. *Crowther*, 55 Maine, 358; *Jackson* v. *Parks*, 10 Cush., 550; *Lord* v. *Parker*, 3 Allen, 129; *Edwards* v. *Stevens*, Id., 315; *Ingham* v. *White*, 4 Allen, 412; *Gay* v. *Kingsley*, 11 Allen, 345; *Robbins* v. *Pattee*, Id., 588; *Chapman* v. *Kellogg*, 102 Mass., 246; *Abbott* v. *Winchester*, 105 Mass., 115; *Sweat* v. *Hall*, 8 Vermont, 187.

Appleton, C. J. The plaintiff and defendant intermarried on the twentieth day of July, 1869, and have since been divorced. While the marital relations continued, they lived in a house and occupied a farm owned by the defendant. The plaintiff offered to show that during the continuance of the marriage, he was employed by the defendant to make valuable improvements upon her real estate and to pay the taxes assessed thereon—and that at her request, prior to their intermarriage, he advanced money after their marriage to pay an outstanding mortgage upon the same.

Were these several contracts such as the wife was authorized to make ? Were they binding upon her in law or in equity ? The parties to these contracts having ceased to be man and wife, can the husband maintain an action upon the promise of his wife to repay money advanced at her request to relieve her estate from incumbrance, or for labor and improvements made upon her house and lands.

Similar statutes varying in detail but all materially enlarging the rights and duties as well as the corresponding obligations and liabilities of married women have been enacted in most of the states.

The power is given to the wife to enter into contracts in reference to her own estate as if unmarried. In fact, in relation to her separate estate she is as if sole. She may give notes for land conveyed to her for her own use and she will be liable therefor. *Stewart* v. *Jenkins*, 6 Allen, 300. She may bid at an auction for the sale of real estate and if the highest bidder will be held to complete her purchase. *Faucett* v. *Currier*, 109 Mass., 79. Her contracts for buildings to be erected or improvements to be made upon her own land are binding upon her. *Pierce* v. *Kittridge*, 115 Mass., 374. Indeed she has full and entire power over her own estate—to convey it, which is the exercise of the highest power—or to charge it with incumbrances to any extent. Her powers over it are unlimited, so far as regards her dealings with persons other than her husband.

The wife may convey her real estate to her husband or receive from him a conveyance of his. *Johnson* v. *Stillings*, 35 Maine, 427 ; *Allen* v. *Hooper*, 50 Maine, 371 ; *Randall* v. *Lunt*, 51 Maine 247. So she may lease her estate to her husband. *Allen* v. *Lord*, 39 N. H., 196. She may enter into a reference in relation to it. *Duran* v. *Getchell*, 55 Maine, 241.

The right to make such contracts implies that they have obligatory force. They would be of no avail, if not binding. If effectual for one purpose, they are so for all. If the wife can convey to her husband, she may be bound by the covenants of her deed. If the husband is liable for the rent of his wife's estate to her,

she is none the less bound to the faithful performance of the covenants contained in such lease.

The rights of married women—the legal relations between husband and wife—their several and respective rights as to the public and as between each other have been repeatedly and materially changed by legislative action. To determine what they may be at any given time, recourse must be had to the then existent legislation. At the same time, past legislative action as well as the rules of the common law must not be forgotten.

By R. S., c. 61, § 1, a married woman of any age, may own in her own right real and personal estate acquired by descent, gift or purchase; and may manage, sell, convey and devise the same by will, without the joinder or assent of her husband; but real estate directly or indirectly conveyed to her by her husband, or paid for by him, or given or devised to her by his relatives, cannot be conveyed by her without the joinder of her husband in such conveyance; except real estate conveyed to her as security or in payment of a *bona fide* debt actually due to her from her husband."

By § 2 a married woman may release to her husband the right to control her property or any part of it . . . . and may in writing revoke the same.

By § 3 she may receive the wages of her personal labor, not performed for her own family, maintain an action therefor and hold them in her own right against her husband or any other person.

By § 1 the wife can convey real estate "conveyed to her as security or in payment of a *bona fide* debt actually due to her from her husband." The wife then may contract with her husband. Without the right to contract there could be no debt "actually due." Without this she could not contract for its payment or security. A deed from either to the other is a contract between them. If the real estate is held as security, the discharge of such security is a contract. The section implies separate estates, separate interests in regard to such estates and the mutual and reciprocal right of contract in regard to the same.

By § 4, which is a condensation of prior statutes, the wife is

made liable for debts contracted "for any lawful purpose." She may be a surety and she will be bound by the obligation of suretyship. *Mayo* v. *Hutchinson*, 57 Maine, 546. The wife can contract with any person as to her real estate, and under that general right she can lease or convey to her husband. She can contract "for any lawful purpose." No limitation is imposed upon her general right to contract, save that the purpose be lawful. No restrictions are intimated as to the person or persons with whom contracts for lawful purposes may be made. The contract to improve her real estate, to pay taxes, and to remove incumbrances upon it, are all for a "lawful purpose." If made with any one but the husband, their binding obligation would not be questioned. But their lawful purpose is the same with whomsoever made. They are just as binding as the deed or the lease which she may give to or take from her husband.

The result is that the wife having the general and unrestricted power of making any and all contracts in relation to her estate, its sale, lease, improvement, with the further right to make contracts for any lawful purpose may contract with whomsoever she may choose. She may contract with her husband equally as with any one else. True, the courts would carefully scrutinize the contracts made between husband and wife, but when fairly and honestly made, no reason can exist why they should not be enforced. "Courts of equity, for many purposes, treat the husband and wife as the civil law treats them, as distinct persons, capable (in a limited sense) of contracting with each other, and of having separate estates, debts and interests. A wife may, in a court of equity, sue her husband, and be sued by him." 2 Story's Eq., § 1368, The husband and the wife have separate property, and each may bind their respective estates.

It is not necessary to consider the question whether the plaintiff can recover for the board of his step-daughter, as it has not been discussed by the counsel on either side.

The objection to the maintenance of an action at common law arising from the marital relation no longer exists. The binding

obligation to pay for services rendered remains in full force. The disability to sue has ceased. There is no occasion to resort to equity. The action may be maintained at common law. *Webster* v. *Webster*, 58 Maine, 139 ; *Tunks* v. *Grover*, 57 Maine, 586.

*Case to stand for trial.*

WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.