## CURTIS *et al.* v. ASHWORTH.

A husband, under the Civil Code, § 4413, and existing statutes enlarging the rights and functions of married women, is not liable for an independent tort committed by the wife in the operation of an automobile not furnished by him to the wife, and not used in the husband's business, but operated without his consent, command, or participation in any way.

No. 6065.   FEBRUARY 25, 1928.

Certiorari; from Court of Appeals.   36 *Ga. App.* 783.

*Harris & Harris,* for plaintiffs in error.

*Willingham, Wright & Covington,* contra.

HINES, J.   Are a husband and his wife jointly liable in this State for her independent tort, committed by the wife in negligently driving and operating an automobile, not in the business of the husband, but without his consent, command, or participation; there being no allegation in the petition brought by the injured party against both the husband and wife, to recover damages, that the automobile belonged to the husband, and the alleged liability of the husband being based solely upon the ground of his marital relation?   He was so liable by the common law.   *Smith* v. *Taylor,* 11 *Ga.* 20, 22; 30 C. J. 786, § 414, (c).   This principle was embodied in the Code of 1863, § 2904, and is there stated as follows:   "Every person shall be liable for torts committed by his wife, and for torts committed by his child, or servant or slave by his command, or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary."   That Code as a whole was adopted by an act of the legislature.   The principle announced in the section cited has appeared in totidem verbis, with the omission of the words "or slave," in all the succeeding Codes: (1868) § 2910; (1873) § 2961; (1882) § 2961; (1895) § 3817; (1910) § 4413.

---

Husband and Wife, 30 C. J. p. 786, n. 56; p. 787, n. 74.
Statutes, 36 Cyc. p. 1147, n. 30; p. 1167, n. 2, 3.

The Codes of 1895 and 1910 were adopted by acts of the legislature. This being so, it is urged that the principle, that every person is liable for torts committed by his wife, is now of force as if specifically enacted by statute in those years. The argument is that the acts of the legislature adopting the Codes of 1863, 1895, and 1910 had the effect of adopting this principle as the statute law of this State, the same as if it had been adopted in separate statutes. So it is contended that this principle is now of full force and effect, without alteration or modification, although there may have been enacted since the first Code, and after the adoption of the present Code, statutes affecting the status of married women, the effect of which would be to do away with the reasons upon which this principle is based, and to thus change, modify, or abolish it. The argument that this principle is now one of statutory law in this State, with all its original vigor and meaning, because three of the Codes in which it appears were adopted by acts of the legislature, is based upon the decision in *Central Railway Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518). We do not think that decision supports this contention and argument. It was held that "The effect of this act [adopting the Code] is to make a part of the law of the State all new matter embodied in the Code of 1895 which could be constitutionally enacted by the legislature," and "that an act, though unconstitutional as originally passed, on account of containing matter different from what was expressed in its title, if otherwise constitutional, became valid law by its incorporation in the" Code of 1895, upon the passage of the adopting act. This court did not mean to hold that every proposition contained in the Code so adopted had the same effect as if it had been adopted by a separate statute passed as of the date of the adopting act; and that such proposition should not be construed in connection with new matter embraced in the several Codes since its appearance in the first Code. The Code of 1868 was adopted by the convention which framed the constitution of that year; but in spite of this fact this court held that such adoption of the Code of 1868 did not ratify any unauthorized change made in codifying legislative acts. *McDaniel* v. *Campbell,* 78 *Ga.* 188. So in *Kiser* v. *State,* 89 *Ga.* 421 (15 S. E. 495), this court held, that, after a given section of the Code has been amended, a subsequent section which by its language and subject-matter forms

a context thereto, is generally to be interpreted as though the amended section had originally read as it does after being modified by the amendment.

It is a well-settled rule of construction, when there is a conflict between two parts of a single act, that the latest in position will be declared to be the law, as from its position it is presumed to be the last expression of the legislature. *Gilbert* v. *Georgia Railroad &c. Co.*, 104 *Ga.* 412 (30 S. E. 673); *Lamar* v. *Allen*, 108 *Ga.* 158, 164 (33 S. E. 958). In the case last cited it was contended that this rule should apply to a Code adopted by legislative act. This court held that the reason of this rule had been stated to be, that, in the reading of a bill, matter near the close may be presumed to have received the last consideration, and, if assented to, was a later conclusion; but Judge Cobb, who delivered the opinion in that case, said: "If such is the reason, the rule should not be applied in all its strictness when the provisions of a code of laws are under consideration, as such a body of laws is rarely, if ever, read in the General Assembly." It was further held that where there are two conflicting sections in a code, that section prevails which is derived from a source which can be considered as the last expression of the lawmaking power. So we can not give to an act of the legislature adopting a Code the same effect as we give to an act dealing with a single subject-matter, and promulgating a single principle of law. So a legal proposition appearing in a section of the Code which has been adopted by an act of the legislature can not be construed in the light of the section alone, but must be construed in the light of all sections which furnish a context to the sections which are to be construed. Furthermore, statutes in pari materia should be considered as forming one homogeneous and consistent body of laws, and each of them may explain and illustrate every other part of the common system to which it belongs. This rule applies with peculiar force to sections of our Code relating to the same subject-matter, and codified at the same time; because they must be construed, if possible, to harmonize with each other. *Thomason* v. *Fannin*, 54 *Ga.* 361; *Bealle* v. *Southern Bank of Ga.*, 57 *Ga.* 274; *Georgia Penitentiary Co. No. 2* v. *Nelms*, 65 *Ga.* 67; *Mitchell* v. *Long*, 74 *Ga.* 94.

In determining whether the section with which we are dealing

has been changed, modified, or abolished by subsequent acts relating to the status of married women, we must first refer to the reason upon which the principle is based. Various reasons for this rule have been given by different courts. Some of the decisions hold that it rests upon the fact that the husband took all the wife's property and was entitled to all her earnings, and that as she had no estate out of which a judgment against her could be satisfied, he should be held answerable for her wrongs. Others hold that the rule rests upon a merger of her civil existence in his. Still others state that the rule has been adopted because the husband, at common law, had the power of correcting his wife, and that therefore he was responsible for her conduct. Still others give as a reason for the rule, that, as the wife could not be sued alone, the injured party would be without redress unless the husband were held liable with her. 13 R. C. L. 1229, § 264. In this case it is strongly urged that the reason upon which the principle is based is that the civil existence of the wife is merged in that of the husband. Our Civil Code, § 2992, declares that "her legal civil existence is merged in the husband, except so far as the law recognizes her separately, either for her own protection, or for her benefit, or for the preservation of public order." This principle appeared in the same language in each preceding Code: (1863) § 1700; (1868) § 1743; (1873) § 1753; (1882) § 1753; (1895) § 2473; (1910) § 2992. It can not reasonably be held that this principle now has the same force and effect that it had when embodied in the Code of 1863 because the Codes of 1895 and 1910 were adopted by acts of the legislature. It must be conceded that, though announced in the same language in all the Codes, it has been greatly changed, modified, and partially, if not totally, repealed by subsequent legislation. The first change was brought about by the woman's property act of 1866, which declared that from and after its passage "all the property of the wife at the time of her marriage, whether real, personal, or choses in action, shall be and remain the separate property of the wife; and all property given to, inherited, or acquired by the wife during coverture shall vest in and belong to the wife, and shall not be liable for the payment of any debt, default, or contract of the husband." Acts 1866, p. 146. This principle was codified (Code of 1868, § 1744), and has likewise appeared in all subsequent

Codes: (1873) § 1754; (1882) § 1754; (1895) § 2474; (1910) § 2993. It was embodied in the constitution of 1868 and of 1877. Code (1868) § 5219; Code (1910) § 6456. In *Huff* v. *Wright,* 39 *Ga.* 41, it was said: "This change of the law entirely changes the relation which married women bear to their husbands, so far as their estate in their property is concerned. Husband and wife are no longer a unit, one person in law, with all the property vested in the husband as the head of the family, and subject to his debts, but they are in law, so far as property is concerned, two distinct persons with distinct and separate rights. In a word, the common-law rule upon this subject no longer prevails in this State. . . And every married woman . . remains as to her property, a feme sole, with power to purchase, hold, and convey property, contract and be contracted with, sue and be sued as a feme sole." See *Francis* v. *Dickel,* 68 *Ga.* 255. It follows that the civil existence of woman, as to her property, is not merged in that of the husband; but as to her property she is a separate and independent unit.

This change in the property rights of married women greatly modified the principle that the civil existence of the wife is merged in that of the husband. It robbed the principle of much of its effect. It has resulted in the destruction of the subjection of the wife to the husband. This change in the right of the wife to inherit, acquire, and dispose of property, independently of her husband, put her in a position where she is not dependent upon her husband, and such independence has led to her emancipation from his control and given her the new freedom which she now enjoys. It follows that, as she can now acquire, enjoy, and dispose of property as fully as her husband can, the reason for the rule that made the husband liable for her torts, because she had no estate out of which judgment against her for such tort could be made, has ceased to exist. The wife can now contract, with the limitation that she can not bind her separate estate by any contract of suretyship, nor by any assumption of the debts of her husband, nor by any sale of her separate estate to a creditor of her husband in extinguishment of his debts. Civil Code, § 3007. She can sue and be sued. *Huff* v. *Wright,* supra. So the reason of the rule making the husband liable for the torts of his wife, because a suit could not be maintained against her alone, during coverture, no longer

exists.  A married woman can now be guardian for the person or property, or both, of any minor, whether her own child or that of another.  Acts 1876, p. 19; Acts 1922, p. 543; Civil Code, § 3038. A married woman is eligible to the position of State librarian. Acts 1896, p. 40.  She is made eligible to stand competitive examinations with male physicians, for filling any vacancy which may occur in the corps of assistant physicians at the lunatic asylum.  Acts 1897, p. 110.  She may be appointed to hold any office in the children's court.  Acts 1908, p. 1107.  She is eligible to the office of commercial notary public.  Acts 1912, p. 62.  She is eligible as clerk of the court of ordinary.  Acts 1916, p. 43.  She can be an attorney at law.  Acts 1916, p. 76.  She is eligible as deputy clerk of a superior or city court.  Acts 1918, p. 118.  She can be State historian.  Acts 1918, p. 140.  Married women are now "entitled to the privilege of the elective franchise, to hold any civil office, or perform any civil functions in as full and complete a manner as the same may be enjoyed by any male citizen of this State."  Acts 1921, p. 106; 8 Park's Code Supp. 1922, § 2167. By these sweeping changes in the law governing the civil rights of married women, the doctrine of the merger of the civil existence of the wife and husband has been practically swept away.  The wife is now made, in all the important affairs of life, the equal of the husband.  While the husband is still declared by statute to be the head of the family (Civil Code, § 2992), he, like the King of England, is largely a figurehead.

In view of these sweeping changes in the rights of married women, can it any longer be held, with any degree of reason, that her civil existence is merged in that of her husband, and that for this reason the husband is liable for her torts?  As so many of the husband's rights and privileges have been swept away by the statutes in this State, and as his lordship has been practically, if not completely, swept away by the various statutes to which we have referred, why should he be held to his old time marital liabilities, which were based upon his former marital rights and privileges? The reason for the liability having ceased, and the consideration therefor having failed, the rule imposing the liability should likewise cease.

The question whether the liability of the husband for the torts of the wife has been modified or repealed by the various statutes

enacted since the principle was codified from the common law has never been decided by this court. It was not involved, though alluded to, in *Chastain* v. *Johns,* 120 *Ga.* 977 (48 S. E. 343, 66 L. R. A. 958). In that case the only question before the court was the liability of the father for the tort of his minor child. What was there said, while entitled to weight on account of the legal ability of the judge who wrote the opinion, is not a precedent for the guidance of this court. The question is still an open one. In this case, the wife was driving an automobile which the petition does not allege the husband furnished her for her pleasure in which he might be liable (*Griffin* v. *Russell,* 144 *Ga.* 275, 87 S. E. 10, L. R. A. 1916F, 216, Ann. Cas. 1917D, 994), but in which the husband had no interest; and by its negligent operation she injured a third person, when she was not engaged in the business of her husband, and was not acting with his consent, or under his command, or with his participation. It does not distinctly appear from the record whether the wife owned the automobile or not. It does appear that the husband did not own it. The wife either owned it, or had acquired it in some way for her use and enjoyment. It is fair, in these circumstances, to treat the automobile as that of the wife during the time she was driving it and using it. In these circumstances is the husband liable for the tort so committed by the wife, under section 4413 of the Code? By the great weight of authority it is held that the common-law liability of the husband for the voluntary torts of the wife is abrogated, so far as concerns torts connected with her separate property, by the married women's acts, which, in general, confer upon the wife the ownership and management of her own property, free from the control of her husband, without expressly repealing such liability.

A New York statute empowered married women to take and hold real property for their sole and separate use, and to convey and dispose of it and its rents and profits in the same manner and with like effect as if they were unmarried; and declared that it should not be subject to the disposal of their husbands, or liable for their debts. In Quilty v. Battie, 135 N. Y. 201 (32 N. E. 47, 17 L. R. A. 521), it was held that a married woman was liable for an injury caused by the bite of her husband's dog which she harbored on her own premises with knowledge of its vicious propensities, and that the husband, without knowledge of its vicious

propensities, was not liable for damages caused by the bite of the dog, although the wife was found liable. In Hinds *v.* Jones, 48 Me. 348, it was held that a husband could not be charged as executor de son tort on account of the acts of his wife in embezzling goods and effects of a deceased relative without his knowledge. The court held that it would be manifestly unjust, since the statute deprived the husband of all interest in the wife's estate, to hold him liable as executor in his own wrong for her acts in relation to all such property of persons deceased as she might, without his knowledge and consent, choose to interfere with, or claim as her own by reason of heirship or otherwise. In New Jersey a statute was passed permitting a married woman to contract and hold real and personal property as if a feme sole. In Wolff *v.* Lozier, 68 N. J. L. 103 (52 Atl. 303), the Supreme Court of New Jersey held that "A wife alone is liable for her torts, when committed in the management and control of her separate property, since the statutes relating to married women." This ruling was followed and approved in Harrington *v.* Jagmetty, 83 N. J. L. 548 (83 Atl. 880).

An act of Kentucky provided that the husband has "no estate or interest in the wife's property, real or personal, during her life, owned at the time or acquired after marriage;" and that "during the existence of the marriage relation the wife shall hold and own all her estate to her separate and exclusive use, and free from the debts, liabilities, or control of her husband." In Lane *v.* Bryant, 100 Ky. 138 (37 S. W. 584, 36 L. R. A. 709), it was held that a husband was not liable for slanderous words spoken by his wife, under this statute, which gave her the control and use of her property independent of the husband or his control. In delivering the opinion in that case, Chief Justice Pryor said: "The liability of the husband at the common law was based on the idea of his absolute dominion over the person of his wife, with the right to all of her personal and the use of her real estate, to the rents and profits of her realty, to her earnings and labor, and the power of the control of the wife by the husband was carried to such an extent as to vest in him the right to use such forcible means as would bridle her tongue or make her of good behavior. The rule is a harsh one at best, and, with the progress of civilization and the changes by a wise, modern legislature of the relations between husband

and wife as to the right of property and personal control by the husband, it would seem absurd, in this enlightened age, to regard the wife as a mere machine, made to labor and to talk as the husband directs, and to make him liable on that ground for her torts, when not committed by his direction or procurement." Speaking further of the Kentucky statute, which conferred upon the wife the right to hold and own property for her exclusive use, and free from the debts, liabilities, or control of her husband, he said further: "The wife, under this statute, may make contracts, sue and be sued, collect her rents, and may sell and dispose of her personal property. While it may be and is the marital duty of both to aid each other in the support and maintenance of each and of their children, the control and use of the wife's property by her is independent of the husband, nor subject to his control, and the familiar doctrine that the legal existence of the wife is merged in that of the husband no longer exists; and as on this rule is based the common-law liability of the husband for the wife's torts, and even for her debts contracted before marriage, the reason for enforcing this doctrine is gone, and past adjudications on this subject will not be followed." This principle was again announced by the Court of Appeals of Kentucky, in Davidson *v.* Manning, 168 Ky. 288 (181 S. W. 1111).

In Claxton *v.* Pool (Mo.), 197 S. W. 349, it was held that a man is not, since the passage of the married women's act, responsible for the tort of his wife in alienating the affections of another woman's husband. The court said: "We are of the opinion, that, according to the spirit, purpose, and general scope of recent legislation, in addition to specific statutory provisions, as well as the freedom of conduct accorded to married women of later years, all indicating a complete absence of the reason which supported the old rule relating to a husband's common-law liability for his wife's torts, the rule should no longer be recognized as in existence." In Boutell *v.* Shellaberger, 264 Mo. 70 (174 S. W. 384, L. R. A. 1915D, 847), it was held: "A man is not, under statutes giving his wife the right to manage her separate property, liable for torts committed in the management of her statutory separate estate, such as injuries to a tenant by the operation of an elevator in her apartment house, where he was not present, and did not direct or otherwise participate in the management." In Fos-

ter *v.* Ingle, 147 Tenn. 217 (246 S. W. 530, 27 A. L. R. 1214), it was held, under a statute of Tennessee emancipating married women "from all disability on account of coverture, and the common law as to the disability of married women and its effects on the rights of property of the wife, is totally abrogated," with an exception which need not be stated; and declaring that "marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and to do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of all property, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married," that "the common-law liability of a husband for the voluntary torts of the wife is abrogated, so far as those torts are connected with her separate property, and therefore a husband is not liable for the damages caused by his wife's negligence in operating an automobile which was her separate property." In Hageman *v.* Vanderdoes, 15 Ariz. 312 (138 Pac. 1053, L. R. A. 1915A, 491, Ann Cas. 1915D, 1197), the court held that a statute, which conferred on the wife the ownership and management of her own property, free from the control of her husband, abrogated the common-law liability of the husband for the torts of his wife connected with her separate estate, though the statute did not expressly refer to the subject of his liability for her torts.

The cases so far dealt with relate to the liability of the husband for torts committed by the wife in the management of her separate estate. There are other decisions which hold that the general liability of the husband for the torts of the wife is no longer of force under statutes which secure to her all property owned at the time of the marriage, all property which she may afterwards acquire, and the control of her property free from the debts of the husband, although the torts do not arise in connection with the management of her property. In Martin *v.* Robson, 65 Ill. 129 (16 Am. R. 578), the Supreme Court of Illinois held that under the statutes of that State, giving to the wife the

control of her separate property and of her own earnings, the husband was not liable for the torts of the wife committed during coverture, when he was not present, and in which he in no manner participated. This is a leading case upon this subject. Of this decision it has been said: "This is, perhaps, a sound conclusion. Certainly the reasons on which the new legislation proceeds are such as should leave the wife to respond alone for her torts, for they assume that she is fully capable of controlling her own actions, and can and will act independently of her husband." 1 Cooley on Torts (3d ed.), 198. In Norris *v.* Corkill, 32 Kan. 509 (49 Am. R. 489), the same principle was announced, and for the same reason. In Schuler *v.* Henry, 42 Colo. 367 (94 Pac. 360, 14 L. R. A. (N. S.) 1009), the Supreme Court of Colorado held that "The common law which makes a husband liable for the tort of his wife, committed during coverture out of his presence, and in which he in no manner participates, is repealed by implication by statutes which give a married woman absolute control and dominion over her property and person, since the reasons for that rule arising from the common law status and dependence of the wife no longer exist." In Harris *v.* Webster, 58 N. H. 481, it was held, that, under a statute giving to the wife the right to hold property to her own use, free from the interference or control of the husband, the husband should not be joined with the wife as a defendant; the court saying: "Since the wife's property is no longer her husband's nor her earnings his, by mere force of law, and since he has no more legal power of physical control over her than she has over him, no  .  .  reason seems to remain for holding him liable for her torts." In Gustine *v.* Westenberger, 224 Pa. 445 (73 Atl. 913), it was decided, that, under a statute providing that a married woman may be sued civilly in all respects and in any form of action with the same effect and results and consequences as an unmarried person, the husband is not liable in damages for the torts of his wife. To the same effect is the decision in Smith *v.* Machesney, 238 Pa. 538 (86 Atl. 493).

In Culmer *v.* Wilson, 13 Utah, 129 (57 Am. St. R. 713, 44 Pac. 833), it was decided that a husband was not liable for the torts of his wife, committed before marriage and while she was the wife of another man, the court saying: "The common-law rule,  .  . which made the husband liable for the wife's torts, proceeded upon

the ground that as the husband succeeded, jure mariti, to the entire estate of the wife, real and personal, and to the right to her earnings, so that she could not respond in damages for any wrong which she might commit, it was but right that he should respond for her, so long as the coverture continued. Such being the reason of the rule, if a statute intervenes giving the wife, during coverture, the sole control of all property owned by her before marriage, and that acquired afterwards by purchase, gift, bequest, with the rents, issues, and profits thereof, and the same is the separate property of the wife, and the same may be held, managed, controlled, and transferred, and in any manner disposed of by her, without any limitation or restriction by reason of marriage, with the right to use and possess the same, thus taking away entirely the reason of the common-law rule, it would seem, on principle, that the rule itself ought to cease." In Bourland v. Baker, 141 Ark. 280 (216 S. W. 707, 20 A. L. R. 525), the Supreme Court of Arkansas decided, that, under a statute declaring that "Every married woman . . shall have all the rights to contract and be contracted with, to sue and be sued, and in law and equity shall enjoy all the rights and be subjected to all the laws of the State, as if she were a feme sole," the common-law liability of man for the torts of his wife was abrogated, and that the husband was not liable because the wife drove an automobile against a pedestrian to his injury. There are decisions holding the contrary: Henley v. Wilson, 137 Cal. 273 (58 L. R. A. 941, 92 Am. St. R. 160, 70 Pac. 21); McElfresh v. Kirkendall, 36 Iowa, 224; Pett-Morgan v. Kennedy, 62 Minn. 348 (30 L. R. A. 521, 54 Am. St. R. 647, 64 N. W. 912); Zeliff v. Jennings, 61 Tex. 458; Patterson v. Frazer (Tex. Civ. App.), 93 S. W. 146; Keller v. James, 63 W. Va. 139 (59 S. E. 939, 14 L. R. A. (N. S.) 1003).

While in the instant case it is not necessary to decide that the liability of the husband for the torts of the wife has been wholly abrogated by our statutes enlarging the personal, civil, and political rights of women, as we are dealing with a tort committed by the wife in the management of her separate property, we are of the opinion that the husband, under our statutes which have changed the status of married women, is no longer liable for the independent torts of the wife not committed by his command or with his consent, and in which he did not in any way participate.

This conclusion is based upon the ground that, as all the reasons for which the husband was made liable for the independent torts of the wife have been swept away, the rule thereof has been done away with. So we are of the opinion that the judgment of the Court of Appeals should be

*Reversed. All the Justices concur except*

ATKINSON, J., dissenting. The controlling question as made by the record may thus be stated: Where a married woman, negligently driving an automobile in which her husband had no interest, injured a third person, and at the time of the injury the woman was not engaged in the business of her husband, nor was he present nor in any way associated with the automobile, the woman, or the injury, is the husband civilly liable for the tort? It is not stated that the husband and wife were living in a state of separation at the time of the injury, and the question will be decided without reference to any such change of condition if it existed. To what extent the provisions of the Civil Code (1910), § 2997, relating to non-liability, under specified circumstances, for necessaries furnished the wife in cases of separation and the like, would affect the question, is not involved. It was provided in the first Code (1863, § 2904) as follows: "Every person shall be liable for torts committed by his wife, and for torts committed by his child, or servant or slave by his command, or in the prosecution, and within the scope of his business, whether the same be by negligence or voluntary." That Code was adopted by the legislature, and had the binding effect of a statute. *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831 (supra). Subsequently the law commonly known as the married woman's act provided: "That from and after the passage of this act all the property of the wife at the time of her marriage, whether real, personal, or choses in action, shall be and remain the separate property of the wife, and that all property given to, inherited, or acquired by the wife during coverture shall vest in and belong to the wife, and shall not be liable for the payment of any debt, default, or contract of the husband." Acts 1866, p. 146. Other statutes have been passed enlarging the rights and liabilities of married women, but neither the act of 1866 nor other acts expressly or by necessary implication repealed the code section. The Code of 1868, § 2910, which was not adopted by act of the legislature, contained

the above-quoted section, omitting the words "or slave," and the punctuating comma appearing after the word "prosecution." Section 2961 of the Code of 1873, and section 2961 of the Code of 1882, and section 3817 of the Code of 1895 each contains the identical language and punctuation marks that were contained in section 2910 of the Code of 1868. The Code of 1895 was adopted by the legislature, and had the binding effect of a statute. *Central of Georgia Railway Co.* v. *State,* supra. While the Code of 1895 was in vogue this court, in *Chastain* v. *Johns,* 120 *Ga.* 977 (supra), construing and applying the said code section, held that "A father is not liable for a tort of his minor child, with which he was in no way connected, which he did not ratify, and from which he did not derive any benefit." After that decision the Code of 1910 was adopted by the legislature, and had the binding effect of a statute. *Central of Georgia Railway Co.* v. *State,* supra; *O'Berry* v. *State,* 153 *Ga.* 644, 647 (113 S. E. 2); *Baugh* v. *LaGrange,* 161 *Ga.* 80, 84 (130 S. E. 69); *Carmichael* v. *Citizens & Southern Bank,* 162 *Ga.* 735, 740 (134 S. E. 771).

Section 4413 of the Civil Code of 1910 provides: "Every person shall be liable for torts committed by his wife, and for torts committed by his child, or servant, by his command or in the prosecution and within the scope of his business, whether the same be by negligence or voluntary." It will be observed that in the Code of 1910 the language is identical with that contained in all the Codes except the first, and that the punctuation is identical with that contained in the Code of 1895, except that a comma is placed after the word "servant," and a comma is omitted after the word "command." This change of punctuation was probably made in view of the decision in the case of *Chastain* v. *Johns,* supra. This provision in the Code of 1910 supersedes the provisions in the former Codes. From the foregoing account it appears that this law did not originate in an act of the legislature, and became binding as statutory law by force of the statutes adopting the Codes of 1863, 1895, and 1910. It deals with three subjects: (1) liability of a person for a tort committed by his wife; (2) liability of a person for a tort committed by his child; (3) liability of a person for a tort committed by his servant. The first may be classed separately from the other two, on the basis of merger of the wife's civil existence in that of the husband by rea-

son of the marital relation. It is declared: "Her legal civil existence is merged in the husband, except so far as the law recognizes her separately." Civil Code (1910), § 2992. Also, "If a tort be committed upon the person or reputation of the wife, the husband or wife may recover therefor." § 2994. There is no such merger of legal civil existence upon which to predicate the second and third liabilities, but there are so many marks of similarity in the legal reciprocal duties between parent and child and master and servant that they may be reasonably classed together. In *Griffin* v. *Russell,* 144 *Ga.* 275, 278 (supra), it was said: "A child, however, may occupy the position of a servant or agent of his parent, and for his acts as such the parent may be liable under the general principles ·governing the relation of master and servant, or principal and agent." Upon the principle thus stated it was held that the petition alleged a cause of action against a woman for a tort committed by her minor son by negligently injuring a person while driving her automobile "for the comfort and pleasure of himself and friends, who were riding with him by and with the consent of" his mother.

In Lashbrook v. Patten, 1 Duv. (Ky.) 316, a minor son, while driving his two sisters to a picnic in his father's carriage, drawn by his father's horses, and with his father's approbation, all of the children being members of his father's family, through negligence ran against the carriage of another, causing damage. The Court of Appeals said: "The son must be regarded as in the father's employment, discharging a duty usually performed by a slave, and therefore must, for the purposes of this suit, be regarded as his father's servant. The doctrine that masters are responsible for the injuries arising from the carelessness of their servants whilst in the master's employment, and the discharge of their duties, has been so long recognized and acted on, that we scarcely deem it necessary to elaborate the reasons or recite authorities." With the foregoing classifications in mind the lawmakers in framing the section of the code first declared, broadly and without limitation, liability of a person for a tort committed by his wife. Then follows liability for a tort committed by his child and tort committed by his servant, placing the two in the same class, with the limitation as to both that the tort must have been committed "by his command, or in the prosecution and within the scope of his

business." This view of the law was taken, though expressed in
different language, in *Chastain* v. *Johns* (supra), where it was
said: "At common law, the husband was liable for the wife's
torts, not alone because she could own no separate estate capable
of being subjected, but also because in legal contemplation she had
no existence apart from his, and consequently could do no act
that was not also his act. In Georgia, while the wife at present
is, as to her property rights, practically a feme sole, the fiction of
merger of her legal existence into that of her husband, so pleasing
to masculine vanity, is still maintained, at least in part; for while
she may own and control property, barter and trade, and sue and
be sued, in entire independence of her lord and master, she may
yet do no wrong that is not chargeable to his account. Between
parent and child, however, the law has never recognized a merger
of existence." It is now insisted that the limitation above quoted
from the statute be construed as extending also to the declared
liability for a tort committed by the wife. That would be a strained
and unwarranted construction. If the legislature had intended
that section 2904 of the Code of 1863 should be no more than an
embodiment of the common law, it would not have included the
word "slave." It is also significant that after abolition of slavery
in this State in 1865 and the passage of the "married woman's
act" in 1866, the word "slave" was omitted, while the word "wife"
was retained in the corresponding sections of the subsequent codes.
The change shows that in adopting that part of the Codes the legis-
lature considered those matters. If it had been intended to make
a change as to liability for tort of the wife on account of passage
of the married woman's act, the section as to that matter would
have been changed, as it was changed with regard to tort of a
slave. The Code of 1910 was adopted after all the acts of the
legislature extending powers of married women except those relat-
ing to suffrage and the power to hold office, and those are not
such as by necessary implication would amend or repeal the afore-
said section. Civil Code (1910), § 6445. The fact that a statute
might not be reasonable, or, having originally been reasonable, the
reason of its passage has ceased to exist, is a matter to be ad-
dressed to the legislature; and where a statute has been constitu-
tionally enacted and stands unrepealed or modified by legislative
enactments, the courts are without authority to repeal or modify

it. When the question of whether a husband was liable for the tort of his wife was under consideration before the court of Appeals, construing the Civil Code (1910), § 4413, Judge Jenkins very aptly said: "It will be noted, . . that it [the code section] does not say (as it would have been easy to say had such been the intention) that every person shall be liable for torts committed by his wife, child, or servant by his command, etc., but what it does is first to lay down the common-law rule, complete within itself, that ' every person shall be liable for torts committed by his wife,' and then to add the. qualified liability, 'for torts committed by his child, or servant, by his command,' etc. It does not seem that it can possibly be said that under any reasonable construction the limitation must necessarily be taken to apply to the first clause pertaining to torts committed by the wife. Supplying the words which the reasonable import of the statute would seem to require, it would read as follows: ' Every person shall be liable for torts committed by his wife, and (every person shall be liable) for torts committed by his child, or servant, by his command, etc.' By thus supplying the words which it seems must necessarily be taken for granted, the meaning and intent of the section appears plainer." *Griffin* v. *Miller, 29 Ga. App.* 585, 586 (116 S. E. 339). Construing the statute as indicated, a husband is liable in this State for a tort committed by his wife in the circumstances first hereinabove stated. The statute seems to be far-reaching, unadjusted to conditions existing under present laws of this State, and unwise; but it is so written, and it will require legislation to change it. The courts can not make it otherwise by interpretation. There is great conflict of authority in other jurisdictions on the subject of liability of a husband for a tort committed by his wife, as shown by the majority opinion (see 20 A. L. R. 525, 27 A. L. R. 1214, and citations in annotations). The decisions in those jurisdictions have not been overlooked, but specific reference to them has not been made, because the statute in this State is deemed controlling.