## 37771. ROBESON v. INTERNATIONAL INDEMNITY COMPANY et al.

MARSHALL, Justice.

The plaintiff, Rebecca Robeson Love, filed a petition for declaratory judgment against International Indemnity Company and Joel Love.

In the petition, the plaintiff states that she sustained serious bodily injuries while riding as a passenger in a motor vehicle owned by her and driven by defendant Joel Love. The plaintiff alleges that the injuries were caused by Joel's negligence, and in the petition the plaintiff states that Joel does not deny this. The plaintiff and Joel became husband and wife subsequent to the date the foregoing injuries were sustained. The plaintiff made a claim for her damages against her automobile liability and no-fault insurer, defendant International Indemnity Company, but International denied the claim under the doctrine of interspousal tort immunity. The plaintiff seeks a declaration that interspousal tort immunity does not bar assertion of her claim against the defendants. She argues that the interspousal immunity rule is either inapplicable here, or that it is unconstitutional, or that it should now be abrogated by this court

on policy grounds. The superior court granted International Indemnity's motion for summary judgment, and the plaintiff appeals.

1. "At common law a husband and wife were, in legal fiction, one and the same person, and under that legal fiction the wife had no right of action against the husband for torts committed against her person or property by the husband, whether committed before or during coverture. *Carmichael v. Carmichael,* 53 Ga. App. 663 (187 SE 116); *Wallach v. Wallach,* 94 Ga. App. 576 (95 SE2d 750). The common-law rule is still of force and effect in this State, except where it has been changed by express statutory enactment or by necessary implication. *Heyman v. Heyman,* 19 Ga. App. 634 (92 SE 25); *Hubbard v. Ruff,* 97 Ga. App. 251, 253 (103 SE2d 134). While the statutes of this State embodied in Code Ann. § 2-2801 and Code §§ 53-501, 53-502, and 53-503, have changed this rule with regard to the property rights of married women, they do not purport to change the common law with respect to personal torts committed by one spouse against the other, *Holman v. Holman,* 73 Ga. App. 205, 206 (35 SE2d 923); *Eddleman v. Eddleman,* 183 Ga. 766, 771 (189 SE 833), and the law, with respect to those matters, is still the same as it was under the common law, that is, that marriage extinguishes antenuptial rights of action between the husband and the wife, and after marriage the wife cannot maintain an action against her husband based on a tortious injury to her person, though committed prior to coverture. *Carmichael v. Carmichael,* 53 Ga. App. 663, supra; Henneger v. Lomas, 145 Ind. 287 (44 NE 462); Orr v. Orr, 36 N. J. 236 (176 A2d 241, 91 ALR2d 906)." *Taylor v. Vezzani,* 109 Ga. App. 167 (1) (135 SE2d 522) (1964).

Therefore, it is clear that the claim presently being asserted by the plaintiff is barred by application of the doctrine of interspousal tort immunity.

2. We are thus presented with the question of whether the doctrine should now be judicially abrogated, either on the ground that it is unconstitutional or on policy grounds.

It cannot be said that the doctrine of interspousal immunity is unconstitutional, as a matter of due process or equal protection. As was stated by the Supreme Court of Delaware in reaching this conclusion: "[A]s to the Federal due process and equal protection clauses, little law directly applicable has been brought to our attention. The strongest precedent is Paiewonsky v. Paiewonsky, 3rd Cir., 446 F2d 178, 181-182 (1971), cert. den., 405 U. S. 919, 92 SC 944, 30 LE2d 788 (1972). In that case, . . . the Federal Circuit . . ., found no violation of equal protection in the alleged discrimination resulting from the doctrine of interspousal immunity. The Court said it '(had) not been convinced that the immunity doctrine lacks substantial

vitality' and 'it follows that it has a reasonable relationship to the (promotion of domestic tranquility) interest sought to be furthered by it. See also Brawner v. Brawner, Mo. Supr., 327 SW2d 808, 815 (1959). Other courts in rejecting equal protection claims have noted the doctrine applies to husbands as well as wives. See *Locklair v. Locklair,* D.S.C., 256 F Supp. 530 (1966); Smith v. Smith, 240 Pa. Super. 97, 361 A2d 756, 757 (1976). Due process claims have fared no better evidently on the ground that a spouse does not have a property interest in a cause of action not recognized by common law or on the ground that any such property interest in a suit against a spouse is lawfully restricted in a matter of public concern by the State's police power: [Cits.]" Alfree v. Alfree, 410 A2d 161, 163 (4) (Del. Supr. 1979).

3. Therefore, if the doctrine is to be abrogated, it must be done on policy grounds.

As was previously stated, interspousal immunity was originally based on the legal fiction that husband and wife are in law one person. Although the common-law doctrine concerning the legal identity of husband and wife was eroded through the passage of statutes known as Married Women's Acts in all American jurisdictions in the mid-19th century, the doctrine of interspousal immunity was generally retained by the states on policy grounds that allowance of such suits would disrupt marital harmony and lead to fraudulent, collusive, and frivolous law suits. Prosser, Handbook of the Law of Torts, § 122 (4th Ed. 1971). The view has also been espoused that criminal prosecutions and divorce actions provide adequate remedies for interspousal torts. Id. As late as 1971, the interspousal immunity rule was still followed in a majority of the states. Id.

These policy grounds supporting the doctrine were cogently stated by the Supreme Court of Florida in rejecting an argument that the doctrine of interspousal immunity be judicially abrogated in that state: "There is a reciprocal and often antagonistic relationship between promotion of peace and harmony in the marital relationship and avoidance of fraudulent or collusive claims. A truly adversary tort lawsuit between husband and wife, by its very nature, would have an upsetting and embittering effect upon domestic tranquility. In such cases, there is little likelihood of fraud and collusion, but there is a great probability that the marriage relationship will be adversely affected. On the other hand, if the lawsuit is not adversary and there is no real conflict of interest between the spouses, the peace and harmony of the marriage is not threatened, but there is a great probability of fraudulent or collusive claims. This is particularly true where the defendant spouse is insured and both spouses will benefit if the plaintiff spouse wins the lawsuit and enforces the claim against the insurance company. Under such circumstances, it is unrealistic to

think that the defendant spouse will do all within his or her power to defeat the claim of the plaintiff spouse. We expect too much of human nature if we believe that a husband and wife who sleep in the same bed, eat at the same table, and spend money from the same purse can be truly adversary to each other in a lawsuit when any judgment obtained by the plaintiff spouse will be paid by an insurance company and will ultimately benefit both spouses." Raisen v. Raisen, 379 S2d 352, 355 (Fla. 1979).

However, there has been widespread modern criticism of the policy justifications underlying the rule. See 92 ALR3d 901, Anno., Modern Status of Interspousal Tort Immunity in Personal Injury and Wrongful Death Actions (1979). It has been argued that insofar as the rule is an attempt to foster domestic tranquility, it is overly paternalistic, antiquated, and ineffectual in any event. It has also been argued that insofar as the rule is an attempt to deter fraudulent and frivolous claims, it is overbroad in that it deters the meritorious as well as the nonmeritorious — the courts being equipped to winnow the latter from the former. In this regard, it has been pointed out that insurance companies can protect themselves by exclusionary clauses written into insurance policies.

Acceptance of this criticism is evidenced by the fact that in the past decade the rule has been abrogated in an increasing number of states; and it now appears that only 16 states, including Georgia, still adhere to the rule. See MacDonald v. MacDonald, 412 A2d 71 (Me. 1980).

4. For two reasons, we hold that the doctrine of interspousal immunity should not now be abrogated by this court.

(a) If interspousal tort litigation was allowed, it would be broadly divisible into two distinct types: those suits in which the judgment would actually be paid by one of the spouses and those suits in which an insurance company would be liable for payment of the judgment. Since husband and wife do live from the same purse, it is somewhat problematic to order one to pay a money judgment obtained by the other in a tort suit for personal injury. It is, in essence, a taking from Peter to pay Paul[ine]. And those suits in which the judgment is to be paid by an insurance company are invariably friendly and/or collusive, at least as between the spouses. The present case is no exception. As previously stated, defendant Joel does not deny that he was negligent.

(b) Furthermore, it is a rather close question as to whether abrogation of the doctrine at this juncture would be a proper exercise of judicial authority. Although it is true that the doctrine is of common-law origin, it is of long-standing application; and it is not unrealistic to presume that people have come to rely on it. In

addition, it is the General Assembly and not this court that possesses the resources for determining the viability of the various policy considerations. On matters such as whether husbands and wives should be allowed to sue each other in tort, the expressions of public policy should come from the legislative branch. Alfree v. Alfree, supra; Raisen v. Raisen, supra; Lyons v. Lyons, 2 Ohio St.2d 243 (208 NE2d 533) (1965); Rubalcava v. Gisseman, 14 Utah 2d 344 (384 P2d 389) (1963).

*Judgment affirmed. Jordan, C. J., Hill, P. J., Clarke and Gregory, JJ., concur. Smith, J., dissents.*

DECIDED OCTOBER 14, 1981.

*Robert S. Windholz,* for appellant.
*James B. Gurley,* for appellees.

SMITH, Justice dissenting.

Biblical incantations notwithstanding, the doctrine of interspousal immunity has been abandoned by an overwhelming majority of jurisdiction "with the unanimous approval of legal writers." Prosser, Handbook of the Law of Torts (4th Ed.), § 122, p. 864. In my view, this court has passed up a golden opportunity to lay to rest an antiquated and thoroughly discredited common law rule.

The doctrine of interspousal immunity stems from the common law notion that "a husband and wife [are], in legal fiction, one and the same person." *Taylor v. Vezzani,* 109 Ga. App. 167 (1) (135 SE2d 522) (1964). This legal fiction no longer exists. However, "[t]he [few] courts which [adhere to the doctrine] have buttressed their conclusion by inventing new arguments, not found in the early cases, for denying the remedy." Prosser, supra at 862. This court is no exception.

First, the majority finds that a judgment ordering one spouse to pay another for personal injury is, "in essence, a taking from Peter to pay Paul[ine]." The majority seems to be unaware of the following: 1) under Georgia law, one spouse may sue another for violation of *property* rights *(Eddleman v. Eddleman,* 183 Ga. 766 (189 SE 833) (1937)); 2) many judgments in personal injury suits between spouses would ultimately be paid by insurance companies; and 3) the doctrine of interspousal immunity has been abandoned even in community property states (see, e.g., Freehe v. Freehe, 81 Wash. 2d 183 (500 P2d 771) (1972)).

The majority also finds the doctrine of interspousal immunity necessary to prevent "friendly and/or collusive suits." This position,

however is based "on the very dubious assumption that a wife's love for her husband is such that she is more likely to bring a false suit against him than a genuine one." Prosser, supra at 863. Moreover, "to deny one spouse the opportunity to recover for the tortious conduct of the other because of the possibility of fraud and collusion, belies the centuries old trust in our jury system. An interspousal tort claim should not be saddled with the presumption of fraud *ab initio.* Courtney v. Courtney, 87 P2d 660 (Okla. 1938)." Rupert v. Stienne, 90 Nev. 397, 401 (528 P2d 1013) (1974). "When . . . a wrong has been done, giving rise to a cause of action, our society regards it of the highest primacy that a remedy be afforded, by resort to Court action if necessary. A generalized policy concern to prevent fraud or collusion, as well as a paternalistic interest to protect the citizenry against itself through the elimination of temptations for fraud or collusion, are, in [my] view, insufficiently weighty to render tolerable the basic unfairness and inequity inhering in the denial of a remedy to one who has suffered wrong at the hands of another. [I] do not have so little trust in the general ethics and honor of our citizenry, and in the abilities of our judges and jurors to discern the genuine from the spurious, that [I] must take refuge in the kind of unselective 'overkill' [indulged in by the majority]." Moulton v. Moulton, 309 A2d 224, 229 (Me. 1973).

Apart from the above "reasons" for maintaining the doctrine of interspousal immunity, the majority believes the relevant "expressions of public policy should come from the legislative branch." However, we deal here with a common law rule, not a statute (cf. *St. Regis Paper Co. v. Brown,* 247 Ga. 361 (276 SE2d 24) (1981) (Smith, Justice, dissenting)), and the underlying rationale for the rule disappeared long ago. "When the rationales which gave meaning and coherence to a judicially created rule are no longer vital, and the rule itself is not consonant with the needs of contemporary society, a court not only has the authority but also the duty to reexamine its precedents rather than to apply by rote an antiquated formula. Chief Justice Vanderbilt described this interaction between the judiciary and the evolving common law in an oft cited passage from State v. Culver, 23 N. J. 495, 505, cert. denied, 354 U. S. 925 (1957): 'One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court. There is not a rule of the common law in force today that has not evolved from some earlier rule of common law, gradually in some instances, more suddenly in others, leaving the common law of today when compared with the common law of centuries ago as different as day is from night. The nature of the common law requires that each time a rule of law is applied it be carefully scrutinized to make sure

that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. Dean Pound posed the problem admirably in his Interpretations of Legal History (1922) when he stated, "Law must be stable, and yet it cannot stand still." ' " Lewis v. Lewis, 370 Mass. 619, 628 (351 NE2d 526) (1976). Rather than maintain an outmoded doctrine on the basis of wholly unconvincing arguments, I would start anew, as have so many other courts, with a rule permitting suits between spouses for personal injuries.

It has been noted that appellant sustained her injuries in an automobile accident which occurred prior to her marriage. Despite overwhelming authority to the contrary, a majority of this court tells her that, if she wanted legal redress, she should not have gotten married. In my view, the holding of the majority in the instant case is both legally unjustifiable and grossly unfair. I respectfully dissent.