75220, 75233. TRUST COMPANY BANK v. THORNTON et al.
(two cases).
(368 SE2d 158)

POPE, Judge.

Plaintiffs J. Earl and Mary Jane Thornton brought this wrongful death action pursuant to OCGA § 19-7-1 (c) to recover damages for the death of their adult daughter, Margaret Anne Thornton Gruentzig, who died along with her husband, Andreas Roland Gruentzig, in an airplane crash on October 27, 1985. Plaintiffs' deceased daughter left no surviving spouse or child. The action was brought against the manufacturer of the private airplane and the estate of the deceased husband. In their claim against the estate, plaintiffs allege their daughter died as a result of the negligence of their son-in-law Gruentzig who was the pilot of the plane. The administrator of the Gruentzig estate (hereinafter "Gruentzig") filed a motion for summary judgment on the ground that plaintiffs' wrongful death claim is barred by the doctrine of interspousal immunity. Because a wife may not sue her husband for tortious injury, Gruentzig argued that the wrongful death claim brought by the wife's parents is also barred. Gruentzig's motion was denied and partial summary judgment was granted to plaintiffs on the estate's defense of interspousal immunity. Gruentzig's application for interlocutory appeal was granted (Case No. 75220). As a precautionary measure, Gruentzig also

filed a direct appeal (Case No. 75233), which is hereby consolidated with the interlocutory appeal for review by the court.

The threshold issue raised by this appeal is whether the right of action granted to survivors under Georgia's wrongful death statute is derivative from the rights the decedent had or would have had against the named defendant, so as to subject a wrongful death claim to the defense of interspousal immunity. Plaintiffs argue in support of the lower court's ruling that their wrongful death claim is not derivative from the rights of the deceased daughter. This issue has been vigorously debated over the years by the members of this court. See *Williams v. Ray*, 146 Ga. App. 333 (2) (246 SE2d 387) (1978); *Horton v. Brown*, 117 Ga. App. 47 (159 SE2d 489) (1967); *Harrell v. Gardner*, 115 Ga. App. 171 (2) (154 SE2d 265) (1967). However, the issue has now been settled by the Georgia Supreme Court which expressly ruled that, barring a change in the law by the legislature, interspousal immunity applies to wrongful death cases. *Jones v. Swett*, 244 Ga. 715 (261 SE2d 610) (1979).

Having determined that interspousal immunity may provide a defense to a wrongful death action, the question remains whether interspousal immunity is reasonably applicable to the factual circumstances of the case at hand. The common law doctrine of interspousal immunity from claims for tortious injury has been preserved in Georgia by statute despite the repeal of the former marital unity law. Ga. L. 1983, p. 1309, § 1; Ga. L. 1984, p. 22, § 19 (OCGA § 19-3-8). The traditional policy reasons favoring the retention of the common law immunity rule include preservation of marital harmony and protection against the possibility of collusive or friendly lawsuits between spouses. See *Robeson v. Intl. Indem. Co.*, 248 Ga. 306 (3) (282 SE2d 896) (1981). The courts have held that the policy concerns upon which interspousal immunity is founded may not be present where either an extended separation or an act of violence show there is no "marital harmony" remaining to protect. *Harris v. Harris*, 252 Ga. 387 (2) (313 SE2d 88) (1984); *Smith v. Rowell*, 176 Ga. App. 100 (335 SE2d 461) (1985).

Plaintiffs in the case now before us argue that there is likewise no marital harmony left to preserve where, as here, the marriage has ended by the death of both spouses. Defendant responds by arguing this court recently held, in *Yates v. Lowe*, 179 Ga. App. 888 (348 SE2d 113) (1986), that interspousal immunity still bars an action where the defendant spouse is deceased. *Yates* is similar to the case at hand in that in both cases the lawsuit arose out of an airplane crash allegedly caused by the negligence of the husband pilot, who was killed in the crash. In both cases the marriage between the alleged tortfeasor husband and the injured wife was terminated by death. It is true, as defendant argues, that even though there was no remaining marital har-

mony to protect in *Yates,* the court nevertheless held that the interspousal immunity doctrine barred recovery. However, the holding in *Yates* was based upon the second of the two policy concerns on which the immunity doctrine is founded, namely, the reasonable apprehension of collusion between the surviving wife who was the plaintiff in that case and the deceased husband's estate. In *Yates,* it was "presumed that the plaintiff wife and her deceased husband's estate would be united in the desire to provide for her any available economic support. Consequently, the justifiable fear of a collusive or friendly lawsuit [remained]." Id. at 889. The critical distinction between these two cases is that in the case now before us, the claim against the deceased husband's estate was brought by the deceased wife's parents who, it is undisputed, have no interest in the estate. Therefore, not only is there no longer a marital relationship to preserve, there is, in this case, no reasonable apprehension of collusion between the plaintiffs and the defendant estate. This is not to say that all wrongful death claims for the death of one spouse against the estate of the other deceased spouse are not barred by the interspousal immunity doctrine. For example, if the wrongful death claimants were the surviving children of both deceased spouses, then the claimants might have an interest in the defendant estate sufficient to raise a reasonable apprehension of collusion, as in *Yates.* However, those concerns are not present in the case now before us. "Under these peculiar facts we merely hold, consistent with the principles reviewed in *Robeson,* [supra,] that the reason for the immunity rule simply does not exist here, and that the doctrine of interspousal tort immunity does not apply to bar [the] . . . claim." *Harris v. Harris,* supra at 388.

We note that earlier cases in which the marriage was terminated by death and in which the wrongful death action was brought by one from whom there would be no expectation of collusion have nevertheless ruled that the doctrine of interspousal immunity would bar the action. See *Jones v. Swett,* supra (in which the stepchild of defendant husband sued him for the homicide of his wife, the plaintiff's mother); *Bennett v. Bennett,* 162 Ga. App. 311 (2) (290 SE2d 206) (1982) (in which the stepson of defendant wife sued her for the homicide of her husband, the plaintiff's father). However, these cases are distinguishable because they were decided prior to the repeal of the marital unity statute, former OCGA § 19-3-8 (repealed by Ga. L. 1983, p. 1309, § 1). Therefore, at the time these earlier cases were decided, it was legally impossible for one spouse to sue the other for tortious injury because the legal existence of the two individuals was merged as one in the husband. Thus, marital unity barred the wrongful death claim. Since the repeal of that statute and its replacement with the codification of the interspousal immunity doctrine, it is no longer legally impossible for one spouse to sue the other. Instead, interspousal immunity is

based on policy considerations as applied to the particular facts of the case. See *Harris v. Harris*, supra. Accordingly, in *Smith v. Rowell*, supra, where the executrix of the wife's estate and the wife's mother brought a wrongful death action against the husband for the murder of the wife, we held that the interspousal immunity doctrine would not necessarily bar the action so long as the facts at trial showed at the time of the wife's death there was no marital harmony remaining to preserve and showed there was no collusive activity between plaintiffs and the defendants.

However, one recent case cannot be successfully distinguished and therefore must be overturned. In *Jones v. Jones*, 184 Ga. App. 709 (362 SE2d 403) (1987), the plaintiff, daughter of the deceased husband, brought a wrongful death claim against the surviving wife. As in the case now before us, the marriage was terminated by death and the wrongful death action was brought by one from whom there would be no expectation of collusion. In opposition to defendant wife's defense of interspousal immunity, plaintiff relied upon those cases which hold the doctrine of interspousal immunity does not bar an action where it is apparent from the facts of the case that the policy reasons for the immunity rule do not exist. *Harris v. Harris*, supra; *Smith v. Rowell*, supra. This court distinguished those cases because they involved facts which showed on their face a lack of marital harmony due to either an extended separation (*Harris*) or violent acts between the spouses (*Smith*). The court found the *Jones* case was governed, instead, by *Yates v. Lowe*, supra, because both cases involved simple negligence and not a violent act showing lack of marital harmony.

However, as noted above, the true basis for barring the wrongful death action in *Yates* was this court's continuing concern for the possibility of collusion between the surviving spouse who was plaintiff in that action and the estate of the deceased husband. As discussed above, the facts of the case now before us are distinguishable from those in *Yates* because here there exists no reasonable possibility of collusion. Likewise, upon further consideration it appears *Jones* was also distinguishable from *Yates* in a manner which was not addressed in that opinion. Obviously, the husband could not benefit by conspiring with the wife to bring a tort claim covered by liability insurance because he was dead. There would be no policy reason precluding the daughter of the deceased husband from bringing a wrongful death action against the surviving wife. Therefore, the rationale applied in *Jones* was in error and should not be applied in the case now before us. This is further illustrated by the recent opinion of *Morris v. Brooks*, 186 Ga. App. 177 (366 SE2d 777) (1988), in which the author of the *Jones* opinion held that when applying the analogous doctrine of parent/child immunity, the status of the family at the time the

action is brought, rather than the time the injury occurred, is controlling. "The object of preserving family harmony does not control where there is no family status at the time of filing of the action." Id. at 179. Likewise, the purpose of the interspousal immunity doctrine does not control where the marriage has ended in the death of one or both of the spouses at the time of filing the action.

It is true that a wrongful death action is considered in this state to be derivative from the rights of the deceased person. In both *Jones* and the case now before us the deceased spouse, if still alive, would be barred from bringing an action against the other spouse. But this begs the question. The fact is, in both cases the marriage was terminated by death and there was no longer any marital harmony to protect. We should look to the status of the marriage at the time the action was brought rather than the time the injury occurred. Cf. *Morris v. Brooks*, supra. The Georgia Supreme Court has held where the reasons for the immunity rule do not exist, it should not be applied. *Harris v. Harris*, supra. Now that the marital unity statute has been repealed, the interspousal immunity doctrine is merely the codified public policy of this state. In applying any policy, this court must look to the reason behind the rule. The case now before us is one where the policy concerns are lacking. Following the lead of the Georgia Supreme Court in looking to the specific facts of the case, we find the interspousal immunity doctrine is not a bar to this action.

*Judgments affirmed. McMurray, P. J., Banke, P. J., Benham and Beasley, JJ., concur. Deen, P. J., Carley and Sognier, JJ., dissent. Birdsong, C. J., disqualified.*

Deen, Presiding Judge, dissenting.

In 1927, the Supreme Court noted that "[w]hile the husband is still declared by statute to be the head of the family . . . he, like the King of England, is largely a figurehead." *Curtis v. Ashworth*, 165 Ga. 782, 787 (142 SE 111) (1927). That observation may suggest a concern over the lack of marital harmony. To whatever extent marital discord was attributable to that unequal legal status, the problem has been resolved by the egalitarian ruling of *Orr v. Orr*, 440 U. S. 268 (99 SC 1102, 59 LE2d 306) (1979). In one sense, that progressive development of the law demonstrates the law's purpose of promoting marital harmony. The majority opinion in the instant case loses sight of that policy.

While acknowledging that the doctrine of interspousal immunity remains viable because it promotes marital harmony and protects against collusive lawsuits between spouses, the majority concludes that interspousal immunity does not bar the instant case, because there is no marital harmony to preserve or promote since both spouses were killed in the airplane crash. I cannot concur with that

conclusion, and I respectfully dissent.

In determining the applicability of the doctrine of interspousal immunity, even though both spouses were killed in the airplane crash, it does not necessarily follow that there was no marital harmony to preserve or promote. The literal non-existence of one or both spouses at the time of the lawsuit is not dispositive of the issue of marital harmony. *Jones v. Jones*, 184 Ga. App. 709 (362 SE2d 403) (1987). In *Smith v. Rowell*, 176 Ga. App. 100 (335 SE2d 461) (1985), this court found that a jury question existed over the marital harmony between the two spouses who were both deceased at the time of the lawsuit. (The husband had mortally shot his wife, and then committed suicide.) From *Smith v. Rowell*, it is apparent that where one (or both) of the spouses is deceased, the correct inquiry is whether there would be any marital harmony between them to preserve, if both spouses were still alive.

In such cases, there obviously can be no change in the relationship of the spouses between the time of the tortious act and the filing of the action. As a practical matter then, the only way this determination can be made is by looking at the relationship at the time of the death(s), by considering the memories of the union. Preservation of the peace, love and unity of the basic family household concept perhaps is an inviolate public policy of this state. See the whole court case of *Maddox v. Queen*, 150 Ga. App. 408, 413 (257 SE2d 918) (1979), wherein this writer also noted that " '[m]arriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred.' " Observance of this public policy prevents even death from obliterating or desecrating the precious memories of a harmonious marriage.

In the instant case, there was no evidence whatsoever of any marital discord. Indeed, this is one case where the marriage vows of honoring and obeying harmoniously were consummated and adhered to, literally, until death did them part. (It would appear that all marriages are entered into initially with a rebuttable presumption of marital harmony.) Under the uncontroverted facts, a finding of continued marital harmony was demanded. The airplane crash united the Gruentzigs for posterity. The majority opinion, by judicial fiat, simultaneously seeks to split them up and wipe out this state's policy of promoting marital harmony.

In *Jones v. Jones*, 184 Ga. App. 709, 710, supra, this court held that "[t]he fact that the victim spouse is dead begs the question and destroys the principle entirely; it is also immaterial." The majority opinion observes that "[i]n both *Jones* and the case now before us the deceased spouse, if still alive, would be barred from bringing an action against the other spouse. But this begs the question." The majority opinion then proposes overruling *Jones*, preferring instead the

holding of *Morris v. Brooks*, 186 Ga. App. 177 (366 SE2d 777) (1988). Without further begging the questing, I note that any reliance upon *Morris v. Brooks* is misplaced, since that case was a two-judge decision and thus has no precedential value. *Jones* is sound and controlling here, and should be praised rather than buried.

DECIDED MARCH 17, 1988 —
REHEARING DENIED APRIL 1, 1988 —

*Glover McGhee, Michael H. Schroder, Donald F. Daughterty,* for appellant.

*Robert P. Riordan, G. Conley Ingram, T. Cullen Gilliland, Jay D. Bennett,* for appellees.