CYNTHIA H. ABBOTT *vs.* RANSOM B. ABBOTT *et als.*

Hancock.    Decided May 5, 1877.

*Married woman.*

A wife, after being divorced from her husband, cannot maintain an action against him for an assault committed upon her during coverture; nor against persons who confederated with and assisted him in committing the assault.

ON REPORT.

CASE.    For that heretofore, to wit, on or about the 5th day of September, A. D. 1869, at Hancock in said county, the said defendants maliciously intending to oppress and imprison the plaintiff and to deprive her of her liberty did then and there conspire and act and agree together with others to charge and accuse the plaintiff with being a crazy and insane person and a fit subject for imprisonment in the insane hospital or asylum situated at Augusta, being an institution for the keeping and restraint of insane persons, and in pursuance of said false and wicked intentions, the said defendant and others did falsely and maliciously charge and pretend that the plaintiff was a crazy and insane person, unfit and unsafe to be permitted to go at large or be at liberty, and said defendant did then and there, to wit, at said Hancock, cause the plaintiff to be violently assaulted and taken in the public highway and with great force and inhumanly bound and put in irons and conveyed to the insane asylum or hospital aforesaid, and there imprisoned as an insane person for a long time against her will and to the great injury of her health and comfort, and thereby depriving her of her rightful home and the society of her children and friends hitherto; and the said plaintiff having escaped from said hospital the said defendants following up their said malicious and wicked purposes, threatened, followed and harrassed said plaintiff and endeavored to seize and take said plaintiff back to said asylum and have her further confined, so that the plaintiff was obliged to secrete and hide to save herself from said defendants, and to go away beyond the limits of the state to preserve her liberty and escape the malicious and wicked wrongs and oppressions of the defendants.

And the plaintiff further says that said defendants at said Hancock, on or about the 5th day of September, 1869, did wickedly and maliciously. and falsely accuse the plaintiff with being an insane person, and with force and arms did cause her to be assaulted and taken and conveyed to the insane asylum or hospital at Augusta and there imprisoned for a long time, whereby plaintiff was greatly injured and suffered greatly in body and mind and was subjected thereafter to great hardship and suffering and was greatly harrassed and injured by defendants.

And also for that the defendants on the day and year aforesaid made another assault on the plaintiff and her then beat, wounded and illtreated so that her life was then thereby greatly despaired of, and other wrongs to the plaintiff then did against the peace of the state and to the plaintiff's damage.

Writ dated April 28, 1874. *Ad damnum,* $5000. Ransom B. Abbott, at the time of the acts complained of, was the lawful husband of the plaintiff, and continued to be so until October, A. D. 1872, when she was divorced from him. The plaintiff remained at the hospital in Augusta but a few days and escaped therefrom. The case is reported to the full court to determine the question of law arising upon the facts. If upon the facts as stated in the declaration, together with the above stated facts, the action is barred by the statute of limitations, or if for other reasons, the plaintiff cannot recover against either of the defendants, then the plaintiff to be nonsuit. If maintainable, against either or all of the defendants, the action to stand for trial. The court to indicate whether, upon the foregoing grounds, the action is maintainable against all or any of the defendants.

*H. D. Hadlock,* for the plaintiff.

*A. Wiswell & A. P. Wiswell,* for the defendants.

PETERS, J. The defendants forcibly carried the plaintiff to an insane asylum. The case assumes the act to have been wrongful and wanton. The plaintiff and one of the defendants, at the time, were husband and wife; since then she was divorced. Can an action of tort, for such an injury, instituted after divorce, be sus-

tained by her against her former husband ? We have no doubt, that it cannot be maintained.

Precisely the same question was lately before the English court, and the decision and the reasons on which the decision is grounded meet with our unqualified approval. *Phillips* v. *Barnet*, 1 Q. B. D. 436. It is there held that a wife, after being divorced from her husband, cannot sue him for an assault committed upon her during coverture. In the course of the discussion in that case, Lush, J., says : "Now I cannot for a moment think that a divorce makes a marriage void *ab initio* ; it merely terminates the relation of husband and wife from the time of the divorce, and their future rights with regard to property are adjusted according to the decision of the court in each case ;" Field, J., says : "I now think it clear that the real substantial ground why the wife cannot sue her husband is not merely a difficulty in the procedure, but the general principle of the common law that husband and wife are one person ;" and Blackburn, J., states the objection to be "not the technical one of parties, but because, being one person, one cannot sue the other."

The theory upon which the present action is sought to be maintained is, that coverture merely suspends and does not destroy the remedy of the wife against her husband. But the error in the proposition is the supposition that a cause of action or a right of action ever exists in such a case. There is not only no civil remedy but there is no civil right, during coverture, to be redressed at any time. There is, therefore, nothing to be suspended. Divorce cannot make that a cause of action which was not a cause of action before divorce. The legal character of an act of violence by husband upon wife and of the consequences that flow from it, is fixed by the condition of the parties at the time the act is done. If there be no cause of action at the time, there never can be any.

The doctrine advocated by the plaintiff finds no support from any of the principles of the common law. According to the oldest authorities, the being of the wife became, by marriage, merged in the being of the husband. Her disabilities were about complete. By the earliest edicts of courts, he had a right to strike her as a punishment for her misconduct, and her only remedy was,

that "she hath retaliation to beat him again if she dare." And Chancellor Kent lays down the doctrine, not contradicted or challenged in any of the editions of his commentaries, that, "as the husband is the guardian of the wife, and bound to protect and maintain her, the law has given him a reasonable superiority and control over her person, and he may even put gentle restraints upon her liberty, if her conduct be such as to require it, unless he renounces that control by articles of separation, or it be taken from him by a qualified divorce." 2 Kent Com. 180. But there has been for many years a gradual evolution of the law going on, for the amelioration of the married woman's condition, until it is now, undoubtedly, the law of England and of all the American states that the husband has no right to strike his wife, to punish her, under any circumstances or provocation whatever. See, upon this subject, the cases collected in a learned and instructive note to the case of *Commonwealth* v. *Barry*, in 2 Green's Cr. L. Reports, 286. Still, the state of the old common law serves to show the basis upon which the marriage relation subsisted ; and we do not perceive that there has been, either by legislative enactment or by the growth of the law in adapting itself to the present condition of society, any change in that relation which can afford the plaintiff a remedy. So to speak, marriage acts as a perpetually operating discharge of all wrongs between man and wife, committed by one upon the other. As said by Settle, J., in *State* v. *Oliver*, 70 N. C. 60, "it is better to draw the curtain, shut out the public gaze, and leave the parties to forget and forgive."

We are not convinced that it is desirable to have the law as the plaintiff contends it to be. There is no necessity for it. Practically, the married woman has remedy enough. The criminal courts are open to her. She has the privilege of the writ of *habeas corpus*, if unlawfully restrained. As a last resort, if need be, she can prosecute at her husband's expense a suit for divorce. If a divorce is decreed to her, she has dower in all his estate, and all her needs and all her causes of complaint, including any cruelties suffered, can be considered by the court, and compensation in the nature of alimony allowed for them. In this way, all matters would be settled in one suit as a finality.

It would be a poor policy for the law to grant the remedy asked for in this case. If such a cause of action exists, others do. ·If the wife can sue the husband, he can sue her. If an assault was actionable, then would slander and libel and other torts be. Instead of settling, a divorce would very much unsettle all matters between married parties. The private matters of the whole period of married existence might be exposed by suits. The statute of limitations could not cut off actions, because during coverture the statute would not run. With divorces as common as they are now-a-days, there would be new harvests of litigation. If such a precedent was permitted, we do not see why any wife surviving the husband could not maintain a suit against his executors or administrators for defamation, or cruelty, or assault, or deprivations that she may have wrongfully suffered at the hands of the husband; and this would add a new method by which estates could be plundered. We believe the rule, which forbids all such opportunities for law suits and speculations, to be wise and salutary and to stand on the solid foundations of the law.

The plaintiff invokes the case of *Blake* v. *Blake*, 64 Maine, 177, as supporting her right to sue. That was a suit in assumpsit. In matters of contract there may be a cause of action during coverture, not enforceable by the ordinary methods until afterwards. The common law has been so far abrogated by the force of various legislative acts as to allow contracts to be made by husband and wife with each other. And, to a certain extent, contracts between man and wife always were upheld in courts of chancery. That case, therefore, differs from this.

Then, if the husband is not liable, the question arises whether the co-defendants are liable in this action. We think it follows from the previous reasoning that they are not. The true test as to their liability is, whether an action could have been maintained against them at the time of the act complained of. It is clear that no action was then maintainable. If the co-defendants had been then sued, the action must have been in the name of the husband and wife, and the husband would have sued to recover damages for an injury actually committed by himself. Husband and wife must declare that the injury was *ad damnum ipsorum*. She cannot, at

common law, sue in her own name alone, nor in his without his consent. She cannot appoint an attorney, ordinarily, but he must do it for her. His conduct and admissions can affect the suit. He can release the cause of action and she cannot. She could do no act to redress an injury to her without his concurrence. Nor has the common law been changed in any of these respects until 1876; which was after this action was commenced. Laws of 1876, c. 112. The damages recoverable in an action would have belonged to him and not to her. And, at the same time, if she had committed a tort, he would have been civilly liable for it. It is very certain, therefore, that no action could ever have been sustained against them in his name. They merely aided and assisted him. But if there was no injury to him there was none to her. They were one. Without doubt, after the death of the husband, a wife may maintain an action in her own name for a wrong committed upon her while her husband was alive, if no action was instituted nor the cause of action released during his lifetime ; and undoubtedly the same right follows after a divorce *a vinculo matrimonii*. But she can only recover for such a wrong as she and her husband could have recovered for in their joint names while the marriage relation subsisted. She succeeds after death or divorce to just such rights as existed before that time. The language of the law is that the right survives to her. But there must be some right in existence to survive. Here there was none. A thing cannot continue after an event which does not exist before. It would not be the survival of a claim, but would be one newly created. *Norcross* v. *Stuart*, 50 Maine, 87. *Marshall* v. *Oakes*, 51 Maine, 308. *Ballard* v. *Russell*, 33 Maine, 196. *Laughlin* v. *Eaton*, 54 Maine, 156. *West* v. *Jordan*, 62 Maine, 484. *Hasbrouck* v. *Weaver*, 10 Johns. 247. *Snyder* v. *Sponable*, 1 Hill, (N. Y.) 567. Bacon Ab., Baron and Feme, K. *Shaddock* v. *Clifton*, 22 Wis. 114.                    *Plaintiff nonsuit.*

APPLETON, C. J., WALTON, DICKERSON and VIRGIN, JJ., concurred.

BARROWS, J., concurred in the result.