**Marsha J. MOULTON**

v.

**Wayne MOULTON.**

Supreme Judicial Court of Maine.

Sept. 5, 1973.

Vafiades, Brountas & Kominsky by Eugene C. Coughlin, Lewis V. Vafiades, Bangor, for plaintiff.

Mitchell & Ballou by John W. Ballou, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

On August 31, 1968 plaintiff, Marsha J. Moulton, then Marsha J. Smith, was riding as a passenger in an automobile operated by a friend, Wayne Moulton, who is the defendant in the present action. The automobile became involved in a collision resulting in personal injuries to the plaintiff.

On January 18, 1969, plaintiff and defendant became husband and wife.

Two years later, while still married to Wayne Moulton, plaintiff instituted against him the instant civil action alleging that his negligent operation of the automobile on August 31, 1968 was responsible for the

serious bodily injuries she had sustained.[1] Defendant filed a motion for summary judgment of dismissal, attaching documentary proof that the plaintiff and defendant were husband and wife. Pursuant to Rule 72 M.R.C.P., the case has been reported to this Court for decision of the rights of the parties.

■ It has long been settled in the law of Maine that tortious conduct occurring during the marriage relationship by one spouse against the other creates no cause of action. This proposition has been fully explained in Abbott v. Abbott, 67 Me. 304 (1877). It has been frequently affirmed in decisions including: Smith v. Gorman, 41 Me. 405 (1856); Libby v. Berry, 74 Me. 286 (1883); Sacknoff v. Sacknoff, 131 Me. 280, 161 A. 669 (1932).

The principle is supported on two grounds. First, the common law merged two human beings, once they had become husband and wife, into a single legal person; and if only one legal person is involved as tort feasor and victim, by the logic of this situation no cause of action can arise. Second, as fully discussed in Abbott v. Abbott, supra, there is the independent public policy consideration, deemed overriding, that as to tortious conduct between husband and wife occurring during their marriage relationship, to encourage marital harmony

" 'it is better to draw the curtain, shut out the public gaze, and leave the parties to forget and forgive.' " (p. 307 of 67 Me.)[2]

When, however, a marriage relationship is absent, the principle is too elementary to require citation of authority that tortious conduct by one person toward another (absent other unique factors) gives rise to a cause of action.

In the case at bar, then, during the period between August 31, 1968 and January 18, 1969 when the parties were unmarried, plaintiff had an independent cause of action for tort against defendant for which plaintiff could have commenced and maintained a civil action to achieve a judgment —surely, so long as all had transpired prior to the date of the marriage, January 18, 1969.

The narrow issue here precipitated concerns the legal effect upon plaintiff's independently existing cause of action, and her right to vindicate it by a civil suit, which results from the supervention of her marriage to defendant.

Quoting from a dictum in Anthony v. Anthony, 135 Me. 54, 188 A. 724 (1937):

"[s]uits between spouses, with certain exceptions . . . [not including, as specified in Anthony v. Anthony, suits at law for tort] are not authorized in Maine" (p. 55, 188 A. p. 724),

defendant contends that

"the *language* of our Maine cases makes it abundantly clear that suits of the nature of that involved in this case do not lie." (emphasis supplied)

■ If, however, the instant case is to be held precedentially controlled by prior Maine cases, the "language" of the cases is not determinative. The "language" must be evaluated in strict relationship to the precise factual situations to ascertain the *decisions*, since only the decisions impose the constraints of "stare decisis."

By such analysis, we discern that prior Maine cases, as called to our attention by defendant or disclosed by independent research, and in which, relative to actions of tort, may be found general language that one spouse is disabled from suing the other

---

1. When the action was commenced, the mother of plaintiff joined as an additional plaintiff, but she was later dropped as a party.

2. The various statutes designed to guarantee that married women shall have separate property have been consistently held to create no cause of action in favor of a married woman where none had previously existed.

during the marriage, the tortious conduct upon which the action was based had occurred during the marriage relationship. Thus, on the facts of these cases, the broad language of "disability" is dictum; the cases *decided* only the principle, stated at the commencement of this opinion, that tortious conduct occurring during marriage by one spouse toward the other *fails to create a common law cause of action.*

The same language has appeared, however, in other Maine cases which pertain to conduct concerning contractual matters occurring before the marriage, Carlton v. Carlton, 72 Me. 115 (1881), as well as during the marriage: Crowther v. Crowther, 55 Me. 358, 359 (1868); Webster v. Webster, 58 Me. 139, 144, 145 (1870); Blake v. Blake, 64 Me. 177, 182, 183 (1874); Hobbs v. Hobbs, 70 Me. 381, 383 (1879); Morrison v. Brown, 84 Me. 82, 83, 24 A. 672 (1891); Perkins v. Blethen, 107 Me. 443, 446–448, 78 A. 574 (1911); Mott v. Mott, 107 Me. 481, 483, 78 A. 900 (1911).

▮ By force of the variously enacted married woman's separate property statutes, the common law doctrine that marriage deprives a woman of separate property (whether acquired before or during marriage) has been abrogated; and, for this purpose,

> " 'property' includes choses in action as well as choses in possession. . . . In its broadest sense it includes every thing which goes to make up one's wealth or estate." Carlton v. Carlton, supra, at p. 116 of 72 Me.

Hence, in all of the foregoing contract cases—regardless of whether the conduct occurred before or during marriage and because the conduct concerned contractual rights—a cause of action undoubtedly came into existence preserved to the wife as her separate property. Yet, notwithstanding that the wife was thus the owner of a cause of action (contract) against her husband, the above cases reiterate the principle that were the husband and wife allowed to be two opposed parties to a common law action, the common law conception of the husband and wife as a single legal personality would be contravened.

The language to this effect is fairly to be considered dictum in most of the above-mentioned cases in which the facts were that the marriage relationship had been terminated either by divorce or death and the decision was that, for this reason, the action by one spouse against the other would lie.

In three of the cases, however, Crowther v. Crowther, Hobbs v. Hobbs and Perkins v. Blethen, even though the Court acknowledged the existence of a cause of action, the action by one spouse against the other was held barred on the rationale that, logically deriving from the common law principle that husband and wife are one legal person, is the consequence that husband and wife are disabled from constituting the two legal persons necessary to a common law action.

In the evaluation of whether continued precedential vitality should be accorded to this aspect of the decisions of the above three cases, we observe, initially, that subsequent changes in our legal system have materially diminished the cogency of particular facets of the reasoning utilized in them.

▮ First, the circumstances in which arrest (and imprisonment), whether on mesne process or execution, are now available are so narrowly restricted that, for all practical purposes, this mechanism is virtually extinct as an incident of the commencement and maintenance of civil actions. Hence, no longer need we be disturbed by the concern expressed in Crowther v. Crowther, supra, that authorization of common law actions between husband and wife would be intolerable insofar as it could render of frequent occurrence the unseemly spectacle of husband and wife arresting and imprisoning each other.

Second, since 1960 our civil jurisprudence has been functioning under a structure in which common law forms of action have been abolished and law and equity are merged in the same Court which proceeds under a single system of practice utilizing a single form of action as to which

" . . . historical ancestry whether legal or equitable is of no moment. . . ."

and

"(a) party makes known in his demand for relief what it is that he wants, and in obtaining it he is not shackled by the formalisms of the common law or the niceties of equity procedure." Field, McKusick & Worth, Maine Civil Practice, § 2.1, p. 35

The overriding importance previously attributed to the distinction between law and equity (so heavily relied upon in Perkins v. Blethen, supra) has thus been markedly attenuated. Presently, husbands and wives who would seek to enforce against each other causes of action sounding traditionally at common law would utilize the same Court, the same form of action and the same procedure as do husbands and wives who have always been entitled to enforce against each other causes of action sounding in equity. In the face of these facts, were we to persist in denying to husbands and wives requisite capacity to become parties adverse to each other solely on the ground that the causes of action they seek to enforce against each other sound at common law, we should indeed be contradicting the spirit of the merger of law and equity; we should stubbornly, hollowly and anachronistically be preserving the "shackles" of the "formalisms" of the common law.

In 1963, within three years after our present system of civil practice became operative, this Court plainly indicated the wisdom of avoiding rigid adherence to each and every consequence which might flow by logical deduction from the common law's arcane transmutation of two human beings, once they have become husband and wife, into a single legal personality.

In Bedell v. Reagan, 159 Me. 292, 192 A.2d 24 (1963) this Court upheld a defendant's right to contribution as asserted against a husband in a third party action sequentially brought by defendant in relation to an action of the husband and wife instituted against him for negligence. Defendant claimed contribution against the husband as to those damages for which defendant might be held liable to pay the wife. Since contribution is generally regarded as requiring that there be a common liability of (both) tort feasors to the injured parties, and since in Bedell v. Reagan one of the tort feasors was the husband of the injured party, the Court, to allow contribution in the interests of basic fairness, was obliged to supersede the total precedential control, for all purposes, of that logical consequence of the "mystical concept of personal, wedded unity" that a husband can not be held a tort feasor as against his wife for conduct occurring during the marriage relationship.

It should be emphasized, also, that in Bedell v. Reagan this Court acknowledged that the authorization of contribution might, in part, defeat the "paternalistic" policy concern to avoid potential sources of "domestic discord." Yet, because this Court disclaimed that "marital discord" would be "engendered" to "any insuperable degree", it further concluded that

"[s]uch a regrettable evil must be regarded, . . . , as more tolerable than a denial of contribution . . . ." (pp. 299, 300, 192 A.2d p. 28.)

In 1969 this Court made the following comment concerning the significance of Bedell v. Reagan:

"The reciprocal disability of spouses respecting litigation against each other arising from feudalistic customs out of the concept of unity of the parties to a marriage contract has endured to this day as a vestigial remnant of State policy

dedicated to the preservation of domestic tranquility. The common law doctrine of unity in marriage has been so eroded during the years by positive legislation that in modern times the status of the spouses has been practically equalized and the unity of marriage concept remains more theory than fact. In realistic terms, we decided in Bedell that '[t]he mystical concept of personal, wedded unity and the paternalistic apprehension of domestic discord between the spouses can not be so compelling as to vindicate' the rule of spousal immunity from contribution between joint tortfeasors when one of the joint wrongdoers happens to be the spouse of the injured party." Roberts v. American Chain & Cable Co., Me., 259 A.2d 43, 48 (1969)

Such approach in Bedell v. Reagan, within three years after the changes designed to achieve a single system of civil practice in this State, reveals this Court's awareness that the judicial branch of government has the prerogative, often enlarged into the responsibility, of responding to new conditions of the present free of the constraints of instrumentalities carrying over from the past and which prevent the efficient and equitable fulfillment of modern needs. This Court perceived that "stare decisis" will ultimately become a self-defeating principle if, in functioning to achieve stability in the law, it operates so inflexibly as to deny to judges the power to move ahead amidst the onrushing currents of change in the present when, in standing still restrained by the bonds of the past, they must fall behind into a cultural lag of unfairness and injustice.

Under present conditions it would be anomalous for this Court to persist in rigid adherence to a distinction that in "equity" husband and wife will be recognized as two legal persons but at "law" such recognition

will be inoperative. In the spirit of Bedell v. Reagan decided since, and in light of, the establishment of a system of uniform civil practice merging law and equity,[3] and which we affirm as a sound and wise judicial attitude, we adjudicate that the cases of Crowther v. Crowther, Hobbs v. Hobbs and Perkins v. Blethen (all supra) are without continuing precedential force insofar as they hold that, *by itself and without more*, the logical consequence deriving from the common law mystique that husband and wife are a single legal person—that it is a contradiction in terms that one legal person can be the two legal persons minimally requisite for a common law action—bars the maintenance, during marriage, of a common law action between husband and wife brought to enforce a cause of action avowedly existing.

In the instant case, then, plaintiff was the owner of a cause of action against defendant arising from tortious conduct toward her occurring prior to their marriage. Under the married women's property statutes plaintiff continued to be the owner of this cause of action, as her separate property, notwithstanding her marriage to defendant. As the result of the decision herein, plaintiff is not disabled from being a separate legal party plaintiff in a civil action to enforce her cause of action which is brought against her husband as the adverse defendant.

If, then, the persent action is not to lie, the ground must be some independent public policy consideration deemed of sufficient gravity to outweigh the general high priority policy that one who has a cause of action for a wrong done by another is entitled to achieve redress by Court action.

In the present context, we discern no such countervailing policy factors. We see little jeopardy to marriage harmony. When

---

3. In Potter v. Schafter, 161 Me. 340, 211 A.2d 891 (1965) this Court took further occasion to characterize Bedell v. Reagan as a decision ". . . that the integrity of the civil rules and their declared purposes, . . . within

the narow limits required equitably . . . ., overrode the pre-existing rule of marital disability of the common law." (p. 342, 211 A.2d p. 892)

the wrong occurs prior to marriage, the parties, thus aware of it and that it may be enforced, expectably, will take it into account in arriving at their marriage decision. Should they agree that the action shall be brought, this mutual accord will tend to prevent animosity, or hostility, during the prosecution of the action. If, on the other hand, the action is instituted contrary to an agreement that it not be brought, the occasions when this will happen are likely to be infrequent, and, as was indicated in Bedell v. Reagan, such limited risk of marital discord, though "regrettable", should not overbalance the fundamental unfairness inherent in depriving any person of the right to have legal redress for a wrong actually suffered. Neither should it be the foundation of a public policy which, by making marriage between them the instrumentality for denying to one person injured by another the right of a Court action, could yield the counterproductive consequence that marriage may be foregone, or postponed, to ensure achievement of legal satisfaction for a wrong done.

It has been argued to us that if there will be a minimum of marital discord engendered by the authorization of civil action between husband and wife to enforce causes of action for tortious conduct occurring prior to marriage, it will be largely because the existence of insurance will be the factor inducing husband and wife to agree that the action be brought; and, in such event, the common interest of the parties to gain the the insurance money will encourage fraud or collusion. When, however, a wrong has been done, giving rise to a cause of action, our society regards it of the highest primacy that a remedy be afforded, by resort to Court action if necessary. A generalized policy concern to prevent fraud or collusion, as well as a paternalistic interest to protect the citizenry against itself through the elimination of temptations for fraud or collusion, are, in our view, insufficiently weighty to render tolerable the basic unfairness and inequity inhering in the denial of a remedy to one who has suffered wrong at the hands of another. We do not have

so little trust in the general ethics and honor of our citizenry, and in the abilities of our judges and jurors to discern the genuine from the spurious, that we must take refuge in the kind of unselective "overkill" urged by the argument of defendant.

Plaintiff, avowedly the owner of a cause of action against defendant by virtue of his tortious conduct toward her prior to their becoming husband and wife, and continuing after marriage to be the separate owner of the cause of action, has legal capacity to bring this civil action to enforce the cause of action notwithstanding that the defendant is her husband. No independent countervailing public policy considerations exist of sufficient cogency to require that the action be barred.

The entry is:

Defendant's Motion for Summary Judgment (of dismissal of the action) is denied.

All Justices concurring.

WEBBER, J., sat at argument but retired before the decision was rendered.

POMEROY, J., did not sit.