Stephen A. BLACK, Administrator of the Estate of ·Ruben R. Solmitz

v.

David O. SOLMITZ, Administrator of the Estate of Esther M. Solmitz.

Supreme Judicial Court of Maine.

Dec. 18, 1979.

Powers & Bradford by Carl O. Bradford (orally), Freeport, for plaintiff.

Berman, Berman & Simmons by Jack H. Simmons (orally), Paul F. Macri, Lewiston, for defendant.

Before WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ., and DELAHANTY, A. R. J.

GODFREY, Justice.

On May 14, 1977, Ruben Solmitz, five years old, was a passenger in an automobile driven by his mother, Esther Solmitz, when that automobile collided head on with another vehicle on Route 2 near Farmington, Maine. The Solmitz vehicle was on the left side of the road at the point of impact. Esther Solmitz died instantly. Ruben suffered a severe injury to the brain which incapacitated him so that he could not walk, talk, sit up without support, or understand. The prospects for improvement of his condition were poor.

Stephen Black, as guardian of Ruben Solmitz, brought an action against Ruben's father, David Solmitz, as administrator of Esther's estate, alleging negligence by Esther in the operation of the automobile with resulting damages. Defendant moved to dismiss on the ground that the action was barred by application of the rule of parental immunity. Defendant's motion to dismiss was granted, and the plaintiff duly appealed to the Law Court on May 18, 1978. On May 31, 1978, Ruben Solmitz died, and the parties agreed to substitute Stephen Black, administrator of the estate of Ruben Solmitz, for Stephen Black, guardian of Ruben Solmitz. No allegation has been made that Ruben's death was caused by the injuries sustained in the accident.

The significant facts in the present case are similar to those in *Downs v. Poulin*, Me., 216 A.2d 29 (1966), except that the parent who operated the automobile in *Downs* survived the accident for a few weeks whereas in the present case she was killed instantly. Like the present case, *Downs* involved an unemancipated minor child, bringing an action against its parent's estate for bodily injuries caused by the negligence of the parent in the operation of an automobile in which the child was a passenger.

Appellant asks the Law Court to overrule *Downs,* which denied the injured child's claim. For reasons set forth in this opinion, we think that our application of the doctrine of parental immunity in *Downs* was incorrect and that the consequences of such an application are so unjust that the case should be overruled. We therefore sustain plaintiff's appeal. In doing so, however, we do not intend to repudiate the concept, underlying the decision in *Downs* but misapplied in that case, that certain acts or omissions that would be tortious between strangers may be privileged or non-tortious in appropriate circumstances because of the relationship between parents and their unemancipated minor children.

When *Downs* was decided, in January, 1966, it was supported by the authority of judicial decisions in the great majority of American states. During the past thirteen years, however, the highest courts of many states have overruled their prior decisions applying the doctrine in automobile negligence cases, notably Arizona, Delaware (to the extent of automobile liability coverage), Kentucky, Massachusetts (to the extent of liability insurance coverage), Michigan, Minnesota, New Hampshire, New Jersey, New York, North Dakota, Pennsylvania, Virginia and West Virginia.[1] The supreme courts of Alaska, Nevada and Vermont, squarely confronting the question for the first time, have refused to apply the doctrine in motor vehicle negligence cases.[2] In cases involving parental negligence not in the operation of a motor vehicle, California and Hawaii have repudiated their former rule of immunity.[3] Wisconsin had already rejected the rule in a non-automobile case before *Downs* was decided.[4] Connecticut and the Carolinas have enacted statutes abrogating the rule in automobile negligence actions resulting in personal injury.[5] In 1977, the American Law Institute adopted the following language in 4 *Restatement (Second) of Torts,* § 895G (1979):

"§ 895G. *Parent and Child*

(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.

(2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious."

The strong trend against across-the-board application of a rule of parental immunity in tort cases reflects a growing recognition that such a sweeping application results in excessive protection of the interests favored by the rule in derogation of the general principle that there should be no wrong without a remedy.[6] The opinion in

1. *Streenz v. Streenz,* 106 Ariz. 86, 471 P.2d 282 (1970); *Williams v. Williams,* Del., 369 A.2d 669 (1976); *Rigdon v. Rigdon,* Ky., 465 S.W.2d 921 (1971); *Sorensen v. Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (1975); *Plumley v. Klein,* 388 Mich. 1, 199 N.W.2d 169 (1972); *Silesky v. Kelman,* 281 Minn. 431, 161 N.W.2d 631 (1968), modifying the rationale of *Balts v. Balts,* 273 Minn. 419, 142 N.W.2d 66 (1966); *Briere v. Briere,* 107 N.H. 432, 224 A.2d 588 (1966); *France v. A.P.A. Transport Corp.,* 56 N.J. 500, 267 A.2d 490 (1968), applied in *Small v. Rockfeld,* 66 N.J. 231, 330 A.2d 335 (1974); *Gelbman v. Gelbman,* 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969); *Nuelle v. Wells,* 154 N.W.2d 364 (N.D.1967); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971); *Smith v. Kauffman,* 212 Va. 181, 183 S.E.2d 190 (1971); *Lee v. Comer,* 224 S.E.2d 721 (W.Va.1976). The courts of Florida, Georgia, Illinois, Indiana, Mississippi, Oklahoma and Texas have adhered to a general rule of parental immunity despite the trend away from it. See cases collected in Annot., 41 A.L.R.3d 904, § 3 (1972 and Supp. 1979).

2. *Hebel v. Hebel,* 435 P.2d 8 (Alaska 1967); *Rupert v. Stienne,* 90 Nev. 397, 528 P.2d 1013 (1974); *Wood v. Wood,* 135 Vt. 119, 370 A.2d 191 (1977).

3. *Gibson v. Gibson,* 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971) (negligent direction of minor son); *Peterson v. City and County of Honolulu,* 51 Haw. 484, 462 P.2d 1007 (1970) (negligent supervision of small child).

4. *Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193 (1963).

5. Conn.Gen.Stat.Ann. § 52–572c (Supp.1979); N.C.Gen.Stat. § 1–539.21 (Supp.1977); S.C. Code 1976, § 15–5–210.

6. *See Me.Const.* art. I, § 19: "Every person, for an injury done him in his person . . . shall have remedy by due course of law . . .."

*Downs* identifies those favored interests as, first, the promotion of family harmony and parental authority and discipline, and, second, where liability insurance is available, protection of the insurer against the danger of collusive actions between parent and child. *Downs v. Poulin, supra* at 30–31, 33.

The first reason assigned in *Downs* as justification for the result, namely, the promotion of family harmony and parental authority and discipline, cannot withstand close scrutiny. So many exceptions and qualifications have evolved in application of the rule of parental immunity that the asserted rationale can no longer serve as a valid basis for a sweeping denial of liability. Thus, the doctrine does not apply if the child is of legal age or emancipated at the time of the tort,[7] even though a lawsuit against a parent by an adult child living with the parent would seem to be as disruptive as one by a minor child.

The doctrine is not applied against an unemancipated child who sues his parent for an injury to his property or for vindication of property rights under a deed or will.[8] The anomaly of the property exceptions was noted by the Supreme Court of Ohio in *Signs v. Signs*, 156 Ohio St. 566, 576, 103 N.E.2d 743, 748 (1952), in the following language:

> "It seems absurd to say that it is legal and proper for an unemancipated child to bring an action against his parent concerning the child's property rights yet to be utterly without redress with reference to injury to his person.

> It is difficult to understand by what legerdemain of reason, logic or law such a situation can exist or how it can be said that domestic harmony would be undis-

turbed in one case and be upset in the other."

The Ohio court in the *Signs* case adopted another generally recognized exception to the rule of parental immunity, holding a father liable for negligently injuring his minor child while acting in the course of his business or vocation.[9]

Another exception, recognized in several states which formerly had or still have the rule of parental immunity, arises from the situation in which the negligent parent dies as a result of the same accident that injures the child. When the child sues the estate of the dead negligent parent, recovery has been permitted in those states on the ground that the reasons which may have justified barring the child's remedy against a living parent lose much of their force when the parent-child relationship is terminated by death.[10] In *Downs v. Poulin* our Court refused to adopt such an exception on the theory that the death of the negligent mother several weeks after the accident could "not create a cause of action" which did not exist during her life. The Court feared that to grant an exception would "open wide the door to permit unemancipated minors to file claims of all kinds sounding in tort against the estates of their parents." *Downs v. Poulin, supra* at 34. The Court thought also that to permit the exception "would be discriminating against children whose parents are living in favor of those whose parents are deceased"— overlooking the greater discrimination created by applying the rule against a minor child who sustains bodily injury as the result of negligent operation of an automobile by its parent in favor of other persons who are injured by the same negligent act.

---

7. *E. g., Lancaster v. Lancaster*, 213 Miss. 536, 57 So.2d 302 (1952).

8. *See* W. McCurdy, *Torts Between Persons in Domestic Relation*, 43 Harv.L.Rev. 1030, 1057 (1930).

9. *Accord, Dunlap v. Dunlap*, 84 N.H. 352, 150 A. 905 (1930).

10. *E. g., Thurman v. Etherton*, 459 S.W.2d 402 (Ky.1970); *Brennecke v. Kilpatrick*, 336 S.W.2d 68 (Mo.1960); *Dean v. Smith*, 106 N.H. 314, 211 A.2d 410 (1965); *Palcsey v. Pepper*, 71 N.J.Super. 294, 176 A.2d 818 (1962); *Parks v. Parks*, 390 Pa. 287, 135 A.2d 65 (1957) (dictum). *Contra, Downs v. Poulin*, Me., 216 A.2d 29 (1966); *Castellucci v. Castellucci*, 96 R.I. 34, 188 A.2d 467 (1963); *Campbell v. Gruttemeyer*, 222 Tenn. 133, 432 S.W.2d 894 (1968).

One of the peculiarities of the doctrine is that it is usually not applied to give immunity for the intentional or reckless infliction of bodily harm. *E. g., Mahnke v. Moore,* 197 Md. 61, 77 A.2d 923 (1951) ("malicious and wanton wrongs"); *Hoffman v. Tracy,* 67 Wash.2d 31, 406 P.2d 323 (1965) (parent driving while intoxicated). *See 4 Restatement (Second) of Torts,* § 895G, Comment *e* (1979). One would suppose that two interests the doctrine is supposed to protect, domestic harmony and parental authority, would be served as well by giving parents the same immunity for their intentional or reckless torts as for their negligence in cases where they cause bodily injury to their unemancipated minor children. The reason sometimes given for the difference is that when parents intentionally or recklessly inflict bodily injury on their children (beyond the permitted range of disciplinary privilege, of course), they temporarily abandon their parental responsibility. *See Hoffman v. Tracy, supra.* The cases do not explain why parents should not be deemed also to abandon temporarily their parental responsibility when they negligently cause bodily harm to their children.

Our Court in *Downs v. Poulin,* relying heavily on what was in 1966 the great weight of authority, cited decisions from twenty-one jurisdictions upholding the application of parental immunity as a bar to the claim of an unemancipated minor child for damages resulting from the parent's negligence. *Downs v. Poulin, supra* at 30. Of the twenty-one jurisdictions referred to by the Court as applying the rule, six have since expressly overruled their earlier decisions on which this Court relied: Massachusetts (to the extent of automobile liability insurance), Minnesota, New Jersey, New York, Pennsylvania, and Virginia (in automobile accident litigation only).[11] In particular, the opinion in *Downs v. Poulin* relies

on, and quotes extensively from, *Luster v. Luster,* 299 Mass. 480, 13 N.E.2d 438 (1938) and *Cannon v. Cannon,* 287 N.Y. 425, 40 N.E.2d 236 (1942). Both decisions have since been overruled and their rationale criticized. *See Sorensen v. Sorensen* and *Gelbman v. Gelbman, supra* note 1.

On two points, cases and scholarly writings since 1966 have shown the analysis in *Downs v. Poulin* to be incorrect. First, the Court relied, in part, on an analogy of parental immunity to interspousal immunity. *Downs v. Poulin, supra,* at 32. That reliance was misplaced. At common law there was no conception of any unity of parent and minor child comparable to the conception of the unity of husband and wife. W. Prosser, *Torts* § 122, at 865 (4th ed. 1971).[12] Whereas the rule of interspousal immunity had its roots in the common law notion of marital unity, the rule of parental immunity did not emerge until 1891, when it was first invoked by the Supreme Court of Mississippi, with no citation of authority, in a case where a child placed in an asylum for the insane sued her parents for false imprisonment.[13]

Second, and more serious, was the notion expressed in the *Downs* opinion that the Court was being asked to "create a cause of action" merely because liability insurance was likely to be available in automobile negligence cases. *Downs v. Poulin, supra* at 33. The issue in *Downs,* as here, was not whether a new cause of action should be created but whether a blanket rule of immunity should be invoked to bar a claim for violated duty otherwise clearly maintainable under existing law. As the Supreme Judicial Court of Massachusetts has observed, "permitting recovery by an unemancipated minor against an insured parent is not the creation of a new liability but rather the elimination of an old bar to recovery,

11. See cases cited *supra* n. 1.

12. "The courts which deny the action have relied heavily on the analogy of husband and wife, which seems quite inapplicable because of the difference in the common law concept of the relations, and the absence of statutes to be construed." (footnote omitted.)

13. *Hewlett v. George,* 68 Miss. 703, 9 So. 885 (1891). For a brief history of the doctrine, *see* W. Prosser, *Torts* § 122, 864–67 (4th ed. 1971); 4 *Restatement (Second) of Torts* § 895G, Comment *b* (1979).

and there is no question here of 'attempting to bend general rules of liability.'" *Sorensen v. Sorensen*, 369 Mass. 350, 367 n. 21, 339 N.E.2d 907, 916 n. 21 (1975). *See also Dunlap v. Dunlap*, 84 N.H. 352, 372, 150 A. 905, 915 (1930).

An argument suggested obliquely by the Court in *Downs* is that permitting parent and child to pursue remedies against each other in negligence cases will give rise to collusion and fraud, especially where liability insurance is involved. *See Downs v. Poulin, supra* at 33, quoting from the Massachusetts case of *Luster v. Luster*, 299 Mass. 480, 483, 13 N.E.2d 438, 440 (1938).

Overruling *Luster* in *Sorensen v. Sorensen*, 369 Mass. 350, 339 N.E.2d 907 (1975), the Massachusetts Supreme Judicial Court addressed the collusion argument in the following language:

"The existence of collusion and lack of cooperation is not difficult to establish in the ordinary motor vehicle accident case. Prompt, effective insurance company investigation and the requirement of prompt reports of accidents to the registry of motor vehicles and to the insurer quickly establish the essential facts. Normally, any attempt at deviation from the facts by the insured will be speedily evident and will warrant disclaimer by the insurance carrier. The parent is usually represented by counsel provided by the insurance company. Such counsel is ever alert to protect the interests of the insurance company and ready to expose any attempts at collusive and fraudulent conduct. Any overt attempt at collusion constitutes a criminal offense and will be punishable as such.

Some collusive claims may succeed. But this does not justify the formulation of a rule of blanket denial of recovery for all minors. It would be unjust to bar arbitrarily the claims of injured minors deserving of relief solely because some cases may involve possible collusion between two parties." (Footnote omitted.) 369 Mass. at 365, 339 N.E.2d at 915.

The collusion argument was also rejected by the New York Court of Appeals in *Gelbman v. Gelbman*, 23 N.Y.2d 434, 438, 297 N.Y.S.2d 529, 532, 245 N.E.2d 192, 194 (1969), in the following language:

"The argument has been advanced that, by permitting suits between parent and child for nonwillful negligent acts, we will be encouraging fraudulent lawsuits. The argument fails to explain how the possibility of fraud would be magically removed merely by the child's attainment of legal majority. Nor does the argument pretend to present the first instance in which there is the possibility of a collusive and fraudulent suit. There are analogous situations in which we rely upon the ability of the jury to distinguish between valid and fraudulent claims. The effectiveness of the jury system will pertain in the present situation. The definite and vital interest of society in protecting people from losses resulting from accidents should remain paramount. (See James, Accident Liability Reconsidered: The Impact of Liability Insurance, 57 Yale L.J. 549.)"

*See also* Fuld, J., dissenting in *Badigian v. Badigian*, 9 N.Y.2d 472, 480, 215 N.Y.S.2d 35, 42, 174 N.E.2d 718, 723 (1961).

We have rejected a similar line of argument in upholding the right of a wife to maintain an action for negligence against her husband where the cause of action accrued before marriage. In *Moulton v. Moulton*, Me., 309 A.2d 224, 229 (1973), we said:

"It has been argued to us that if there will be a minimum of marital discord engendered by the authorization of civil action between husband and wife to enforce causes of action for tortious conduct occurring prior to marriage, it will be largely because the existence of insurance will be the factor inducing husband and wife to agree that the action be brought; and, in such event, the common interest of the parties to gain the insurance money will encourage fraud or collusion. When, however, a wrong has been done, giving rise to a cause of action, our society regards it of the highest primacy that a remedy be afforded, by resort to Court

action if necessary. A generalized policy concern to prevent fraud or collusion, as well as a paternalistic interest to protect the citizenry against itself through the elimination of temptations for fraud or collusion, are, in our view, insufficiently weighty to render tolerable the basic unfairness and inequity inhering in the denial of a remedy to one who has suffered wrong at the hands of another. We do not have so little trust in the general ethics and honor of our citizenry, and in the abilities of our judges and jurors to discern the genuine from the spurious, that we must take refuge in the kind of unselective 'overkill' urged by the argument of defendant."

■ We conclude that the case authority supporting *Downs v. Poulin* at the time it was decided has been drastically eroded, that the suppositions on which it rested are disapproved in the better-considered recent cases and in authoritative scholarly writings, and that the holding of the case is counterproductive in achieving the purpose of promoting family harmony or parental autonomy in the governance of minor children. There being no significant reliance interests at stake, we think the decision should be overruled.

Since the rule of parental immunity was a rule originally fashioned by the courts, the courts have the primary responsibility to limit its application when they perceive that it operates erratically with respect to fulfillment of its underlying purpose and produces undesirable results in frequently recurring kinds of situation. The highest courts of at least fifteen states have carried out that responsibility in cases resembling the one now before us, and we see no good reason for disregarding their example.[14]

It suffices for the purposes of this case to hold merely that the complaint should not be dismissed on the ground of parental immunity. It seems proper to add, however that we do not intend to limit our decision to automobile negligence cases in the manner of the Virginia Supreme Court of Appeals,[15] nor do we intend to follow the Massachusetts Supreme Judicial Court in abrogating the rule of parental immunity only to the extent of the parent's automobile liability insurance.[16] Those limitations seem to us objectionable as suggesting that the decision to restrict immunity is based on expediency rather than on correct legal principles. In our view such decisions are difficult to defend against the charge that they effect a result more appropriately reserved for legislation. Furthermore, the Massachusetts rule tailoring abrogation to the amount of the parent's automobile liability insurance leads to difficulties by unavoidably introducing the fact of defendant's insurance, and the amount of it, as elements of a claim or defense. There is evidence that the Massachusetts court is already having trouble with that aspect of its *Sorensen* ruling. *See Lewis v. Lewis*, 370 Mass. 619, 630 n. 4, 351 N.E.2d 526, 533 n. 4 (1976); *Pevoski v. Pevoski*, 371 Mass. 358, 361, 358 N.E.2d 416, 419 (1976).

We would go beyond the necessities of the instant case if we tried to define precisely the scope of our present ruling. To the extent that the so-called "doctrine of parental immunity" reflects the idea that the parent-child relationship is a special one, in which parents should have a reasonably high degree of autonomy in carrying out their responsibilities for care and discipline of their children, we think the doctrine should have continuing vitality. In jurisdictions that have renounced the former sweeping application of the doctrine, most of the opinions reflect concern for preserving a degree of parental autonomy, although the rules laid down for achieving that objective vary considerably from state to state. *Compare, e. g., Cherry v. Cherry*, 295 Minn. 93, 203 N.W.2d 352 (1972), with

14. See cases cited notes 1, 3 and 4 *supra.*

15. *Smith v. Kauffman*, 212 Va. 181, 183 S.E.2d 190 (1971). *See Wright v. Wright*, 213 Va. 177, 191 S.E.2d 223 (1972).

16. *Sorensen v. Sorensen*, 369 Mass. 350, 353, 339 N.E.2d 907, 909 (1975), followed by Delaware in *Williams v. Williams*, 369 A.2d 669 (Del.1976).

*Holodook v. Spencer,* 36 N.Y.2d 35, 364 N.Y. S.2d 859, 324 N.E.2d 338 (1974), *and Gibson v. Gibson,* 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971).[17] *See also 4 Restatement (Second) of Torts* § 895G and Comments (1979). Precisely how the concepts of parental privilege or immunity should be given application must await future cases in which, assisted by briefs and argument of counsel, the Court can delineate the concept in the context of specific situations.

Generally speaking, when a rule of tort law is changed, it is not necessary out of deference to reliance interests to make the change prospective in operation. We have departed from that general rule when important reliance interests of public concern were affected by a change in decisional law. Thus, in *Davies v. City of Bath,* Me., 364 A.2d 1269 (1976), when we decided to abrogate the rule of municipal immunity, we recognized that the decision would affect the fiscal arrangements of municipalities throughout the state. It was desirable to allow time for legislation to be enacted on the basis of which public officials could accommodate their operations to the new regime. Accordingly, we made our ruling prospective in operation.[18]

The instant case differs from that with which we were confronted when we contemplated abrogation of municipal immunity. No factors of comparable weight are present to suggest that we temporize in the same fashion by postponing the effect of the decision. Nevertheless, it is desirable to limit the retroactivity of our ruling. The Maine statute of limitations is, in effect, tolled for tort claims of minors (see 14 M.R.S.A. § 853 (Supp.1979–80)), with the result that the bar of the statute may be postponed for six years from the time a potential litigant alleging injury from parental negligence has attained his majority. Thus, fully retroactive abrogation of the rule of parental immunity would open the door to claims for alleged personal injuries occurring many years ago. The possibility exists that, relying on the *Downs* rule of immunity, potential defendants and their insurers have omitted investigative procedures and maintenance of records looking toward defense against such claims.

While most of the courts abrogating the rule have done so prospectively from the date of appellate decision with the exception of the case decided,[19] we think the fairest accommodation of competing interests in the present case is afforded by following the decision in *Rigdon v. Rigdon,* 465 S.W.2d 821 (Ky.1971), holding that the overruling is to be effective and applicable (1) in the decided case, and (2) in all other similar cases in which the injury complained of occurred on or after the date of the injury in the decided case. Accordingly, our decision is applicable in the present case and in all other similar cases that have not been litigated to final judgment, in which the injury complained of occurred on or after May 14, 1977.

The entry is:

Appeal sustained.

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with this opinion.

McKUSICK, C. J., and POMEROY, J., did not sit.

DELAHANTY, J., sat at oral argument and conference but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

---

17. For a comparative analysis of different approaches, see Note, *The "Reasonable Parent" Standard: An Alternative to Parent-Child Tort Immunity,* 47 U.Colo.L.Rev. 795 (1976).

18. *See generally* W. Schaefer, *The Control of "Sunbursts": Techniques of Prospective Overruling,* 42 N.Y.U.L.Rev. 631 (1967).

19. *E. g., Vickers v. Vickers,* 109 N.H. 69, 242 A.2d 57 (1968).