**Diane MacDONALD et al.**

v.

**Theodore MacDONALD.**

**Chester P. PRUSINSKI**

v.

**Dorothy S. PRUSINSKI.**

Supreme Judicial Court of Maine.

March 12, 1980.

Willard & Kellis, Basil L. Kellis, Sanford, Smith, Elliott, Wood & Nelson, Stephen R. Lamson (orally), Karen B. Lovell, Saco, for Chester P. Prusinski.

Kenneth C. Young, Jr., Somerville, Mass. (orally), for Diane MacDonald et al.

Hunt, Thompson & Bowie, Daniel R. Mawhinney (orally), James M. Bowie, Portland, for Theodore MacDonald.

Hewes, Culley, Feehan and Beals by Richard D. Hewes (orally), Thomas J. Quinn, Portland, for Dorothy P. Prusinski.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN and ROBERTS, JJ.

WERNICK, Justice.

Before us are two cases which we consider, and decide, by a single opinion because they present the same basic issue. We are called upon to, and we do, overrule the decision of this Court in *Abbott v. Abbott*, 67 Me. 304 (1877). We hold that a person injured by the tortious conduct of another person is not precluded from asserting liability against the tortfeasor in a civil action solely because the tortious conduct occurred while they were married to each other.

1.

In *MacDonald v. MacDonald*, plaintiffs Diane, Marise and Lisa MacDonald instituted, on March 20, 1979, a civil action in the Superior Court (Androscoggin County) against defendant Theodore MacDonald to recover damages for injuries caused them by his tortious conduct. The complaint alleged that on September 11, 1977 plaintiffs were passengers in an automobile which defendant negligently drove between two railroad crossing control barriers onto a set of railroad tracks, in consequence of which the automobile was struck by an oncoming train and plaintiffs were injured. At the time of this incident Diane and Theodore MacDonald were husband and wife, and Marise and Lisa were their

unemancipated minor children. Five months after the incident Diane and Theodore were divorced.

Defendant moved to dismiss the action on the ground that the complaint failed to state a claim upon which relief can be granted. The Justice presiding in the Superior Court granted this motion and dismissed the action. As to the complaint of Diane MacDonald against Theodore MacDonald, the Justice relied on *Abbott v. Abbott, supra,* and the subsequent analysis of it in *Moulton v. Moulton,* Me., 309 A.2d 224 (1973). As to the complaint of Theodore's unemancipated minor children against him, the Justice relied on *Downs v. Poulin,* Me., 216 A.2d 29 (1966).[1]

### 2.

In *Prusinski v. Prusinski,* plaintiff Chester Prusinski brought a civil action in the Superior Court (York County) against his wife, Dorothy Prusinski, as the defendant. The complaint alleged that on August 26, 1978 plaintiff was a passenger in an automobile being operated by defendant who negligently drove it against the rear of another vehicle traveling in the same direction, causing plaintiff to sustain serious personal injury and to incur substantial medical expenses.

Defendant moved to dismiss the action for failure of the complaint to state a cause of action on which relief can be granted, on the ground that plaintiff and defendant were husband and wife when the tortious conduct occurred. The presiding Justice granted the motion and dismissed the action, stating:

"tortious conduct occurring during the marriage relationship by one spouse against the other creates no cause of action."

### 3.

In its decision in *Abbott v. Abbott, supra,* rendered more than one hundred years ago,

this Court followed, and applied a logical consequence of, the common law conception that

"[t]he legal existence of the wife was regarded as suspended for the duration of the marriage and merged into that of the husband, so that she lost the capacity to contract for herself or to sue or be sued without joinder of the husband as plaintiff or defendant. . . . If the man committed the tort, the woman's right would be a chose in action that the husband could reduce to possession, and he must be joined as plaintiff against himself and the proceeds recovered must be paid to him. If the wife committed the tort, the husband would be liable to himself for it, and must be joined as a defendant in his own action and pay his own judgment. As a result, it was held that neither spouse could maintain an action against the other for any tort, whether it was committed before or during the marriage." Restatement (Second) of Torts § 895F, Comment b. at 424 (1979).

*See also* 1 W. Blackstone, Commentaries 442 (1807).

The Court so acted because it believed that the "condition of society" in 1877 did not justify changing the rule that marriage, "[s]o to speak, . . . acts as a perpetually operating discharge of all wrongs between man and wife, committed by one upon the other." 67 Me. at 307.

Approximately 85 years later, however, this Court made it unmistakably plain in a series of cases that the "condition of society" had markedly changed in particular respects which raised serious doubts as to the continuing viability of the decision in *Abbott v. Abbott.* In *Bedell v. Reagan,* 159 Me. 292, 192 A.2d 24 (1963), *Roberts v. American Chain & Cable Co.,* Me., 259 A.2d 43 (1969) and *Moulton v. Moulton, supra,* we asserted that it would now be intolerable to

---

1. After the Justice's ruling in this case, this Court overruled *Downs v. Poulin, supra,* in *Black v. Solmitz,* Me., 409 A.2d 634 (1979) in such manner as to control our decision of the issue now being raised. The rule announced in *Black v. Solmitz, supra,* was made effective as to tortious conduct occurring after May 14, 1977 and therefore governs this case where the alleged tort was committed on September 11, 1977.

persist in maintaining policies, or rules, merely because they flowed

"by logical deduction from the common law's arcane transmutation of two human beings, once they have become husband and wife, into a single legal personality." *Moulton v. Moulton, supra,* at 227.

Similarly, we disavowed the value of continuing to indulge a "paternalistic apprehension of domestic discord . . ." *Bedell v. Reagan, supra,* 159 Me. at 297, 192 A.2d 24, as an independent policy justification for denying redress to a person equitably entitled to a remedy for wrong done by another person. We looked upon that policy rationale as a "vestigial remnant", *Roberts v. American Chain & Cable Co., supra,* at 48, which could not

"overbalance the fundamental unfairness inherent in depriving any person of the right to have legal redress for a wrong actually suffered." *Moulton v. Moulton, supra,* at 229.

*Cf. Black v. Solmitz,* Me., 409 A.2d 634, 635–36 (1979).

We rejected, too, the view that the authorization of a civil action between spouses to allow a remedy for tortious conduct by one against the other would encourage fraud or collusion for insurance purposes. We said:

"A generalized policy concern to prevent fraud or collusion, as well as a paternalistic interest to protect the citizenry against itself through the elimination of temptations for fraud or collusion, are, in our view, insufficiently weighty to render tolerable the basic unfairness and inequity inhering in the denial of a remedy to one who has suffered wrong at the hands of another. We do not have so little trust in the general ethics and honor of our citizenry, and in the abilities of our judges and jurors to discern the genuine from the spurious, that we must take refuge in the kind of unselective 'overkill' urged by . . . [such] argument . . . ." *Moulton v. Moulton, supra,* at 229.

*See Black v. Solmitz, supra,* at 638–39; *see also* Constitution of Maine, Article I, Section 19.[2]

With the issue of overruling *Abbott v. Abbott, supra,* now squarely presented to us, we bring together all of the aforementioned expressions of changed attitudes that have come from this Court in the last eleven years. We conclude that they leave no underpinning to support our continued adherence to *Abbott v. Abbott, supra,* and we therefore overrule that decision. We decide that one person is not precluded from maintaining an action to recover damages caused by the alleged tortious conduct of another person solely because the conduct complained of occurred while they were husband and wife.[3]

We have carefully considered, and found unpersuasive, the argument that the judiciary should defer to the legislature for change of the long existing public policy under consideration. We have rejected this contention because the policy at issue was

---

**2.** A challenging discussion of this Section of the Maine Constitution appears in *Note,* "Article I, Section 19 of the Maine Constitution: The Forgotten Mandate", 21 Me.L.Rev. 83 (1969).

**3.** The majority of jurisdictions in ever increasing numbers agree with this view. See, generally, appropriate cases in Annot. 92 A.L.R.3d 901, 924 40 (1979).

It appears that only 16 states still adhere to the rule we now abrogate, including Delaware (*Alfree v. Alfree,* 410 A.2d 161 (1979)) and Florida (*Raisen v. Raisen,* 379 So.2d 352 (1979)) which have recently reaffirmed it. Within the past two years Iowa (*Shook v. Crabb,* 281 N.W.2d 616 (1979)), Nebraska (*Imig v. March,* 203 Neb. 537, 279 N.W.2d 382 (1979)), New Jersey (*Merenoff v. Merenoff,* 76 N.J. 535, 388

A.2d 951 (1978)), and West Virginia (*Coffindaffer v. Coffindaffer,* 244 S.E.2d 338 (1978)) have also abrogated it.

Almost unanimously, legal scholarship has called for abrogation of the doctrine. *E. g.,* Restatement (Second) of Torts, § 895F (1979); W. Prosser, Law of Torts § 122 (4th ed. 1971); 1 F. Harper & F. James, The Law of Torts, § 8–10 (1956); Greenstone, "Abolition of Intra-Family Immunity", 7 Forum 82 (1972); McCurdy, "Torts Between Persons in Domestic Relation", 43 Harv.L.Rev. 1030, 1054–56 (1930); Note, "Domestic Relations—Abrogation of Interspousal Immunity—An Analytical Approach", 10 DePaul L.Rev. 590 (1970); Note, "Litigation Between Husband and Wife", 79 Harv.L.Rev. 1650 (1966).

one "originally fashioned by the courts" and, therefore, it remains the "primary responsibility" of judges to make a change in the policy they originated, despite its long persistence,

> "[w]hen they perceive that it operates erratically with respect to fulfillment of its underlying purpose and produces undesirable results in frequently recurring kinds of situation[s]." *Black v. Solmitz, supra,* at 639.

As the Massachusetts Court has cogently stated the same point:

> "When the rationales which gave meaning and coherence to a judicially created rule are no longer vital, and the rule itself is not consonant with the needs of contemporary society, a court not only has the authority but also the duty to reexamine its precedents rather than to apply by rote an antiquated formula." *Lewis v. Lewis,* 370 Mass. 619, 351 N.E.2d 526, 531 (1976).

*Accord*: *Brooks v. Robinson,* 259 Ind. 16, 22–23, 284 N.E.2d 794, 797 (1972); *Shook v. Crabb,* 281 N.W.2d 616 (Iowa 1979); *Beaudette v. Frana,* 285 Minn. 366, 370–71, 173 N.W.2d 416, 418–19 (1969); *Rupert v. Stienne,* 90 Nev. 397, 399–400, 528 P.2d 1013, 1014–15 (1974); *Immer v. Risko,* 56 N.J. 482, 267 A.2d 481 (1970); *Flores v. Flores,* 84 N.M. 601, 603–04, 506 P.2d 345, 347–48 (Ct.App.1973); *Woods v. Lancet,* 303 N.Y. 349, 102 N.E.2d 691 (1951); *Digby v. Digby,* 388 A.2d 1 (R.I.1978) and *Freehe v. Freehe,* 81 Wash.2d 183, 500 P.2d 771 (1972).

Most recently, this Court's developing recognition of its duty in this regard was manifested concretely in its decision in *Black v. Solmitz, supra.* Fourteen years ago, in *Downs v. Poulin,* Me., 216 A.2d 29 (1966) the Court refused to abrogate the judicially created rule of "parent-child immunity", holding that such change of policy should be left for legislative action. Last year, however, this Court joined with a growing number of other courts in reexamining, and then abrogating, "parent-child immunity" as a bar to the maintenance of actions to recover damages for tortious conduct. *Black v. Solmitz, supra.*

In recent years, too, we have forcefully stated that in matters of tort involving the marital relationship we cannot "stubbornly, hollowly and anachronistically" stay bound by the "shackles" of the "formalisms" of the common law. *Moulton v. Moulton, supra,* at 227. We have also stressed that by so declaring, we do not undermine the principle of *stare decisis*. Rather, we prevent it from defeating itself; we do not permit it to mandate the mockery of reality and the "cultural lag of unfairness and injustice", *Moulton v. Moulton, supra,* at 228, which would arise if the judges of the present, who like their predecessors cannot avoid acting when called upon, were required to act as captives of the judges of the past, restrained without power to break even those bonds so withered by the changes of time that at the slightest touch they would crumble.[4]

---

**4.** We thus regard this Court's refusal to act, and its deferring to the legislature, in *Potter v. Schafter,* 161 Me. 340, 211 A.2d 891 (1965), relied on by defendants, as wrong in theory and in its weakening of the true thrust of *Bedell v. Reagan, supra*. The decision was basically wrong in its intimations that action by the judiciary to change the common law where there is involved a "collision between the principle of stare decisis and contemporary legal philosophy" is " 'to usurp legislative authority'." 161 Me. at 342–43, 211 A.2d at 892. The analysis was deficient in deeming *Bedell v. Reagan* merely a procedural development " 'to secure the just, speedy and inexpensive determination of every action' ", through the introduction of third party practice. 161 Me. at 342,

211 A.2d at 892. This characterization overlooked, or ignored, the foundational substantive points expressly, and cogently, stated in *Bedell v. Reagan,* that:

(1) "The mystical concept of personal, wedded unity and the paternalistic apprehension of domestic discord between the spouses can not be so compelling as to vindicate . . . [the] incongruity [of denying a recovery to one equitably entitled to recover]"; and

(2) "Law is only sensibly formalistic. It is a practical science. it is of the very proper object of equity to prevent the application of a universal legal principle in an eventuality where unconscionable and unjustifiable hardship must otherwise ensue." *Id.,* 159 Me. at 297, 298, 192 A.2d at 26–27.

We are also unimpressed by the contention that this Court should defer to the legislature in the particular context now under consideration because the change of policy sought is said to be—in the phrasing used by the defendants and the Justice of the Superior Court (in *Prusinski v. Prusinski*)—the "creation of a new cause of action." This is a semantic screening of what is really at stake. Since the early days of the common law a cause of action in tort has been recognized to exist when the negligence of one person is the proximate cause of damage to another person. It does not "create a new cause of action" to abandon the "arcane transmutation of two human beings, once they have become husband and wife, into a single legal personality" *Moulton v. Moulton, supra,* at 227, and thereby allow an already existing cause of action to be in play.

We therefore decide that the general rule of tort law that one person injured by the tortious conduct of another person may maintain a civil action to recover damages from the tortfeasor is not rendered inapplicable solely because the injured person and the tortfeasor were husband and wife when the tort was committed.[5]

We observed in *Black v. Solmitz, supra,* at 640:

"Generally speaking, when a rule of tort law is changed, it is not necessary out of deference to reliance interests to make the change prospective in operation."

We discern no special reliance interests involved in what we have decided in the instant cases to suggest postponing the effect of the decision.

Moreover, in contrast to the situation in *Black v. Solmitz, supra,* where we limited retroactive applicability of our decision because the statute of limitations could be tolled in consequence of the involvement of minors, we discern no reason, here, to depart from the general rule that the change in the law we now announce is applicable to any case that has not been terminated in final manner.

The entries are:

(1) In *MacDonald et al. v. MacDonald*: Appeal sustained; the judgment dismissing the complaint with prejudice is vacated; case remanded to the Superior Court for further proceedings consistent with the opinion herein.

(2) In *Prusinski v. Prusinski*: Appeal sustained; the judgment dismissing the complaint is vacated; case *re-*manded to the Superior Court for further proceedings consistent with the opinion herein.

NICHOLS, J., did not sit.

---

5. We take the precaution to mention that this decision does not extend to other areas of the law where the special nature of the marital relationship may have impact for various other reasons of policy. Examples of such different considerations of policy are the evidentiary privileges as to confidential communications between husband and wife, Rule 504 M.R.Evid., and the treatment of particular conduct between husband and wife, by virtue of the mutual concessions that may be implicit in the marital relationship, as privileged or not tortious, even though such conduct as between persons not married to each other may not be so regarded. *See Lewis v. Lewis, supra, Merenoff v. Merenoff,* 76 N.J. 535, 552-553, 388 A.2d 951, 960 961 (1978), *Digby v. Digby,* 388 A.2d 1, 4 (R.I.1978).